UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC. | * * | CIVIL ACTION NO. |
| Plaintiff, | * * | U.S. DISTRICT JUDGE |
| VERSUS | * * | U.S. MAGISTRATE JUDGE |
| DAEBO INTERNATIONAL SHIPPING CO. LTD. AND SHINHAN CAPITAL CO. LTD. | * * | SECTION: |
| Defendant | * | MAG. DIV. |
| * * * * * * * * | | |

**PLAINTIFF'S VERIFIED COMPLAINT WITH REQUEST FOR ISSUANCE OF RULE B ATTACHMENT AND GARNISHMENT**

TO THE HONORABLE DISTRICT JUDGE:

The complaint of Plaintiff, RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC., against Defendants, DAEBO INTERNATIONAL SHIPPING CO., LTD., F/K/A DAEBO SHIPPING CO., LTD. ["DAEBO"] *in personam* and SHINHAN CAPITAL CO. LTD. ["Shinhan"], *in personam,* and for maritime attachment and garnishment of property of Defendants represents upon information and belief as follows:

1.  Plaintiff's claims against Defendants *in personam*, and property owned by Defendants within this District *quasi in rem*, present an admiralty or maritime case within the jurisdiction of the United States and this Honorable Court pursuant to Article III, section 2 of the U.S. Constitution, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure, and are brought pursuant to General Maritime Law, and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.  Venue is proper because Defendants DAEBO INTERNATIONAL SHIPPING CO., LTD. and SHINHAN CAPITAL CO. LTD. cannot be found within this District, and Defendant's property, the *M/V DAEBO TRADER*, is currently within this District and subject to this Court's jurisdiction.

3.  At all times material hereto, Plaintiff RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC. ["RICHARDSON"], was and is a Texas corporation with its principal place of business in Houston, Texas, and is in the business of providing stevedoring, terminal storage, and other marine cargo handling services in the Ports of Houston, Texas, and Mobile, Alabama to companies engaged as ocean carriers that own, operate, manage, and/or charter vessels.

4.  Upon information and belief, and at all material times hereto, Defendant DAEBO (IMO 0658566) was and is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of owning, operating, managing, and/or chartering vessels as an ocean carrier.

5.  Upon information and belief, and at all material times hereto, Defendant SHINHAN (IMO 1841241) was and is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of providing credit-specialized financial services, commercial financing, corporate restructuring, and project financing services.

6.  DAEBO[1] is the reported group owner, ship manager, and operator of the *M/V DAEBO TRADER* (IMO 9230153, Call Sign DSPS8), which is currently within this District. DAEBO is also the reported disponent owner of the *M/V DAEBO TRADER*'s registered owner,

---

[1] *See* Exhibit G, verifying that on January 5, 2010, Daebo Shipping Co., Ltd. merged with Daebo International Shipping Co., Ltd. As of that date, Daebo Shipping Co. Ltd. was no longer in existence and transferred all of its assets, liabilities, and rights and duties to Daebo International Shipping Co., Ltd. Daebo International Shipping Co., Ltd. therefore is the successor group owner of the Daebo Trader.

SHINHAN (IMO 1841241).[2]  DAEBO is therefore subject to this Court's *quasi-in rem* jurisdiction for purposes of martime attachment.

7.  From October 2014 to present, DAEBO engaged RICHARDSON to discharge inbound cargos of steel products from six (6) DAEBO owned, operated, or chartered vessels in accordance with previously established stevedoring and terminal freight handling rates that DAEBO agreed to through nomination of RICHARDSON as its stevedore.[3]

8.  Specifically, pursuant to DAEBO'S nominations, RICHARDSON fully performed discharge of the *M/V HAWK*, *M/V CMB BIWA*, *M/V UBC LONGKU*, *M/V SHOU CHEN SHAN*, *M/V GLORIANA,* and the *M/V TAI HAPPINESS*.  Upon completion of each ship, RICHARDSON provided DAEBO and the vessel's master with an OS&D[4] report detailing what cargos listed in the shipping documents were received, over-shipped, short-shipped, or received in an unsatisfactory or damaged condition.  In each instance, the respective master acknowledged receipt of the OS&D by signing same.

9.  DAEBO'S agreement with RICHARDSON for stevedoring and other services related to discharging its vessels is a maritime contract.

10.  To date, DAEBO has not paid RICHARDSON for any of its services rendered in connection with discharging the six (6) referenced vessels, despite numerous written requests

---

[2]  *See* LLOYD'S REGISTER – FAIRPLAY Fleet List Report by Group Owner for Daebo Shipping Co. Ltd., attached as Ex. A.

[3]  *See* Emails from DAEBO Assistant Manager, D.H. Kim, to Kelly Richardson nominating RICHARDSON to discharge the *M/V HAWK* dated 9/22/14, *M/V CMB BIWA* dated 10/14/14, *M/V UBC LONGKU* dated 11/24/14*, M/V SHOU CHEN SHAN* dated 11/24/14, *M/V GLORIANA* dated 12/1/14*,* and *M/V TAI HAPPINES* dated 12/17/14*,* collectively attached as Ex. B, at pp. 2-3, 5-6, 8-9, 11-12, 14-15, and 17-18, respectively.

[4]  *See* "OVER, SHORT, AND DAMAGED" reports for cargo discharged from the *M/V HAWK*, *M/V CMB BIWA*, *M/V UBC LONGKU, M/V SHOU CHEN SHAN, M/V GLORIANA,* and *M/V TAI HAPPINESS*, attached as Ex. C.

from RICHARDSON to DAEBO for payment.  Specifically, DAEBO has failed to pay invoices from RICHARDSON for stevedoring and related standby and service charges in the following amounts:

| Vessel Name | Date Completed | Amount Due |
|---|---|---|
| *M/V HAWK* | 10/20/2014 | $298,229.30 |
| *M/V CMB BIWA* | 11/15/2014 | $297,660.80 |
| *M/V UBC LONGKU* | 12/11/2014 | $204,320.69 |
| *M/V SHOU CHEN SHAN* | 12/22/2014 | $263,279.66 |
| *M/V GLORIANA* | 12/22/2014 | $303,853.94 |
| *M/V TAI HAPPINESS* | 1/16/2014 | $264,940.86 |
| | **TOTAL** | **$1,632,285.25**[5] |

11. On December 5, 2014, DAEBO's representative promised to pay RICHARDSON's initial invoice for discharging the *M/V HAWK* on December 19, 2014.  RICHARDSON did not receive said payment from DAEBO as promised.  DAEBO next promised to pay Richardson's invoices for the *M/V HAWK* and *M/V CMB BIWA* on February 11, 2015 and February 23, 2015, respectively. RICHARDSON, however, did not receive payment from DAEBO for the *M/V HAWK* invoice on February 11, 2015.[6]

## CAUSES OF ACTION

### *Breach of Maritime Contract*

12. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

13. Plaintiff and Defendant had a valid, enforceable contract to furnish necessary cargo discharge services of the Vessel within the Port of Houston, Texas.

---

[5] *See* Invoices submitted to Daebo by Richardson for discharging cargo off the *M/V HAWK, M/V CMB BIWA, M/V UBC LONGKU, M/V SHOU CHEN SHAN, M/V GLORIANA, and the M/V TAI HAPPINESS,* attached as Ex. D.

[6] *See* Sworn Declaration Chance Richardson, attached hereto as Ex. E.

14. This engagement was memorialized in written nomination agreements and invoices, which called for Plaintiff to serve as stevedore and perform the cargo discharge services of Defendant's vessels calling to the Port of Houston, Texas.

15. Upon completing the contracted-for services, Plaintiff sent Defendant invoices for payment of said services totaling $1,632,285.25.

16. Defendant materially breached the contracts by failing to make payment in the amount of $1,632,285.25 to Plaintiff when same became due and owing.

17. All conditions precedent to Plaintiff's performance have been performed, were excused, were waived, or otherwise satisfied.

18. As a consequence of Defendants' breach, Plaintiff has suffered actual and foreseeable damages, including but not limited to value of the contracts having been fully performed. The contracts in this case were maritime in nature as same involved stevedoring services and cargo discharge operations rendered to Defendant's vessels.

### *Promissory Estoppel*

19. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

20. Defendant made promises to pay Plaintiff $1,632,285.25 for the stevedoring and cargo discharge operations. Plaintiff reasonably and substantially relied on Defendant's promises by performing the discharge operations for Defendant's vessels in the Port of Houston, Texas. Plaintiff's reliance on Defendant's promises has been to its detriment because Defendant has refused to pay Plaintiff the total contracted for invoice amount of $1,632,285.25 upon timely completion of the cargo discharge operations of Defendant's vessels. Plaintiff's reliance on Defendant's promises was reasonably foreseeable by Defendant and injustice can be avoided

5

only be enforcing Defendant's promises to pay for Plaintiff's services. Accordingly, Plaintiff is entitled to recover in the amount of $1,632,285.25 under a theory of promissory estoppel.

### *Quantum Meruit*

21. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

22. Defendant accepted the stevedoring and cargo discharge services performed and completed by Plaintiff. Defendant had reasonable notice that Plaintiff expected compensation for these services, but Defendant has not compensated Plaintiff for the stevedoring and cargo discharge services performed on Defendant's vessels.

23. Accordingly, Plaintiff is entitled to recover from Defendant payment for services rendered through the date of termination. Said outstanding charges total in the amount of $1,632,285.25, which sum is fair and reasonable for the necessary work and services supplied to Defendant's vessels.

### *Alter Ego / Single Business Enterprise*

24. Upon information and belief, SHINHAN, as registered owner of the *M/V DAEBO TRADER,* is merely an alter ego of DAEBO. DAEBO is the reported group owner,[7] ship manager, and operator of the *M/V DAEBO TRADER*, and the reported disponet owner of the SHINHAN. DAEBO, therefore, is in reality the true and beneficial owner of the *M/V DAEBO TRADER* – which is currently alongside Cargill Terminal within this District.

25. Further, upon information and belief, SHINHAN and DAEBO act as a single business entity, with such unity of ownership and interest that no separation exists between them.

---

[7] *See* Ex F, Lloyd's Register – Fairplay Data Definitions, which defines "Group Beneficial Owner" as "the parent company of the Registered Owner, or the Disponent Owner if the ship is owned by a bank – It is the controlling interest behind its fleet and the ultimate beneficiary from the ownership. A Group Beneficial Owner may or may not directly own ships itself as a Registered Owner. It may be the Manager of its fleet, which is in turn owned by subsidiary companies. Its ships may also be managed by a 3rd party under contract."

Specifically, it is believed that SHINHAN have directors and subscribers that have been nominated by DAEBO for purposes of ownership confidentiality and anonymity.

26.     Further, SHINHAN'S registered ownership of the *M/V DAEBO TRADER* should be disregarded. Upon information and belief, SHINHAN is a wholly-owned subsidiary of the larger shipping group – DAEBO; and is nothing more than a bank or one-ship company vehicle set up by a bank.  Accordingly, SHINHAN is a "brass-plate" company created on paper to legally own a ship and possibly to limit liability for DAEBO, which is the "real" and/or "beneficial" owner.

27.     Thus, information and belief, DAEBO ultimately owns and/or controls SHINHAN (the reported entity owner of the *M/V DAEBO TRADER*).

## RULE B ALLEGATIONS

28.     Plaintiff is informed and believes that none of the officers of Defendants DAEBO and SHINHAN are now within the Eastern District of Louisiana, that neither DAEBO nor SHINHAN maintain an office within this District, that neither DAEBO nor SHINHAN are incorporated or registered to do business in the State of Louisiana, that neither DAEBO nor SHINHAN have an agent for the receipt of service of process in Louisiana, and that neither DAEBO nor SHINHAN can be found within this District for purposes of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

29.     Plaintiff is informed and believes that Defendants DAEBO and SHINHAN now have certain goods and chattels, or credits and effects within the Eastern District of Louisiana. Specifically, Plaintiff is informed and believes that DAEBO is the true and beneficial group owner of the *M/V DAEBO TRADER* which is currently within this District. Alternatively, Plaintiff asserts that Defendant SHINHAN is the alter ego of Defendant DAEBO and that they may be treated as one and the same for purposes of the ownership of the *M/V DAEBO TRADER.*

30. Plaintiff requests that this Honorable Court issue a Writ of Attachment and Garnishment for the *M/V DAEBO TRADER* to enforce the Rule B claims asserted herein, and that if Defendants fail to post security, that after due proceedings are had, that the property be sold to satisfy Plaintiff's claims. Plaintiff agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of seizing the aforesaid property.

**WHEREFORE**, Plaintiff prays:

a. That process of maritime attachment and garnishment issue to attach and seize Defendants DAEBO and SHINHAN's goods, chattels, credits and effects, including, but not limited to the *M/V DAEBO TRADER*:

b. That as soon as practicable following the attachment and/or seizure of the *M/V DAEBO TRADER*, a further hearing be held by this Court pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure;

c. That a judgment may be entered against Defendants awarding Plaintiff actual damages, attorney's fees pursuant to law, pre- and post-judgment interest, and court costs in amounts to be determined, and that a decree of condemnation issue against the property of Defendants; and

d. That Plaintiff may have such other and further relief as the Court and justice may deem just and appropriate under the circumstances of the cause.

Respectfully submitted,

**UNGAR & BYRNE, APLC**

/s/ Evette E. Ungar
EVETTE E. UNGAR (#29013)
GEORGE W. BYRNE, JR. (#3744)
CHERYL L. WILD (#28805)
3231 N. 1-10 Service Road W.
Metairie, Louisiana 70002
Telephone No.: (504) 566-1616
Facsimile No.: (504) 566-1652
E-Mail: eungar@ungarlawyers.com
Counsel for Plaintiff Richardson
Stevedoring & Logistics Services, Inc.

8

**OF COUNSEL:**
Douglas T. Gilman
Texas Bar No. 24048496
Federal I.D. No. 19897
Brenton J. Allison
Texas Bar No. 24040417
Federal I.D. No. 36863
Francis I. Spagnoletti
Texas Bar No. 18869600
Federal I.D. No. 5369
GILMAN ✳ ALLISON LLP