UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC. | * * | CIVIL ACTION NO.:  15-00490 |
| VERSUS | * | SECTION:  F JUDGE MARTIN FELDMAN |
| DAEBO INTERNATIONAL SHIPPING CO. LTD. AND SHINHAN CAPITAL CO. LTD. | * * | MAGISTRATE:  2 JUDGE JOSEPH WILKINSON, JR. |

*    *    *    *    *    *    *    *

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO VACATE MARITIME ATTACHMENT</u>**

**MAY IT PLEASE THE COURT:**

Dana Shipping and Trading S.A. ("Dana"), appearing solely and restrictively as the time charterer of the M/V DAEBO TRADER, makes this limited appearance under Rule E(8), with a full reservation of all rights and defenses, to vacate the wrongful attachment of the DAEBO TRADER.  Dana is not involved in the dispute other than being unable to operate the DAEBO TRADER to deliver to China the perishable soybean cargo onboard the ship.

Plaintiff asserts claims against defendant Daebo International Shipping Co. Ltd. ("Daebo"), but it has no claim against the DAEBO TRADER's owner, Shinhan Capital Co., Ltd. ("Shinhan"). Because it cannot carry its burden of proving that Shinhan is an alter ego of Daebo, Plaintiff's allegation that this Court should pierce the corporate veils of those companies is legally deficient and without merit.

Further, Daebo recently commenced a rehabilitation proceeding in Korea, which is similar to a U.S. Chapter 11 proceeding.  In that proceeding, it will be protected from creditors,

and all legal action will be stayed. Daebo will likely seek recognition of those proceedings in the U.S. by way of Chapter 15 proceedings.

Since Plaintiff cannot prove that the DAEBO TRADER is the property of Daebo, and even if it could, Daebo's bankruptcy proceeding would likely stay proceedings against the ship, the attachment should be vacated to prevent damage to Dana and the cargo.

## FACTUAL BACKGROUND

For purposes of this motion, it is not disputed that Plaintiff has a maritime claim against Daebo or that Shinhan is the DAEBO TRADER's registered owner. Plaintiff does not assert any claim against Shinhan, but alleges that Shinhan is Daebo's alter ego and that it does not matter that Daebo is not the registered owner.

Plaintiff's wrongful attachment of the ship interferes with Dana's time charter[1] and Dana's contractual obligations to deliver a cargo of about 57,000 metric tons of soybeans to China. Dana has an interest in this matter and is entitled by Rule E(4)(f) to a prompt post-attachment hearing, and thereafter to an order vacating Plaintiff's wrongful attachment.

## LAW AND ARGUMENT

Supplemental Rule B(1)(a) makes clear that the attachment must be of the defendant's property. It provides in part:

> [A] verified complaint may contain a prayer for process to attach **the defendant's** tangible or intangible personal property - up to the amount sued for . . . . (Emphasis added).

Once a vessel has been attached, Rule E(4)(f) places the burden on the plaintiff of showing why the attachment should not be vacated:

> Whenever property is arrested or attached, **any person** claiming an interest in it shall be entitled to a prompt hearing at which **the**

---

[1] While not in dispute, a copy of the first page of Dana's Time Charter is attached as Exhibit A as evidence of that contract.

2

> **plaintiff shall be required to show why the arrest or attachment should not be vacated** or other relief granted consistent with these rules. (emphasis added).

Plaintiff cannot establish a legal right to attach a ship owned by Shinhan to secure a debt owed by Daebo.

**Plaintiff cannot carry its burden of proving "alter ego" status.**

Plaintiff asserts that Daebo and Shinhan are "alter egos". Courts generally respect corporate separateness.[2] When examining corporate identity, federal admiralty courts generally apply federal common law.[3] Federal common law allows piercing the corporate veil only where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own.[4] The alter ego doctrine is reserved for exceptional cases.[5] In the Fifth Circuit, a showing of fraud or misconduct is required to pierce corporate veils on an alter ego theory.[6]

> While complete domination of the corporation is the key to piercing the corporate veil, . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party attempting to pierce] is required.[7]

In this Court, the lack of specific allegations of fraud or misconduct precludes attachment under Rule B based on an alter ego theory:

> Significantly, moreover, plaintiff has not alleged that fraud or other misconduct chargeable to Shanica caused plaintiff to be unaware of SESL's and Shanica's

---

[2] *See, e.g., Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986) "Corporate separateness is respected unless doing so would work injustice upon an innocent third party."
[3] See *In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991).
[4] See *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980).
[5] *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co., Ltd.*, 2013 WL 1628358, at *3 (S.D. Tex. 2013) (quoting *White Rosebay Shipping S.A. v. HNA Group Co., Ltd.*, 2013 WL 441014, at *3 (S.D. Tex. 2013)).
[6] *Oldendorff Carriers* at *4 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan (Bridas II)*, 447 F.3d 411, 416 (5th Cir. 2006)).
[7] *Oldendorff Carriers, supra* (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan (Bridas I)*, 345 F.2d 347, 359 (5th Cir. 2003)).

separate corporate ownership, governance, accounting, operations, liabilities, and/or assets when negotiating the terms of its time charter party with SESL.[8]

Plaintiff has failed to allege or show that Daebo or Shinhan has misused its corporate separateness to commit any type of fraud or misconduct, either toward Daebo or anyone else.

Courts are particularly hesitant to pierce a corporate veil in contractual disputes.[9] A contracting party can investigate the other's corporate status and protect itself contractually. Plaintiff's claim did not arise through some random or fortuitous tortious conduct; it made the decision to do business with Daebo and could have obtained additional guarantees if it questioned whether Daebo could fulfill its contractual obligations. Its failure to adequately protect itself contractually does not entitle it to pierce the veil of a corporation that has no connection to the disputed transaction.

Courts in this circuit consider up to fifteen separate factors in deciding whether to pierce a vessel owner's corporate veil.[10] Plaintiff has not offered evidence of any of these factors:

1. Common or overlapping stock ownership between the parent and subsidiary

2. Common or overlapping directors and officers

3. Use of the same corporate offices

4. Inadequate capitalization of the subsidiary

5. Financing of the subsidiary corporation by the parent

6. Whether the parent existed solely as a holding company for its subsidiaries

7. The parent's use of the subsidiary's property and assets as its own

8. The nature of inter-corporate loan transactions

---

[8] *Austral Asia Pte., Ltd. v. S.E. Shipping Lines Pte., Ltd.*, 2012 WL 2567149, at *2 (E.D. La. 2012) (Englehardt, J.)(vacating Rule B attachment).
[9] See, Pincus, *Piercing the Corporate Veil in Maritime Cases*, 28 J. Mar. L. & Com. 341, 346 (1997), citing *International Marine Sales, Inc. v. Compania Maritima Georgia "P," Inc.*, 1986 A.M.C. 512, 516 (S.D.N.Y. 1985).
[10] See, *e.g., Sabine Towing & Transportation Co., Inc. v. Merit Ventures, Inc.*, 575 F.Supp. 1442, 1446-48 (S.D. Tex. 1983); *A. Coker & Co., Ltd. v. National Shipping Agency Corp.*, 1999 WL 311941 (E.D. La. 1999).

9. Incorporation of the subsidiary being caused by the parent

10. Whether the parent and the subsidiary file consolidated income tax returns

11. Decision making for the subsidiary made by the parent and its principles

12. Whether the directors of the subsidiary act independently of the interest of the subsidiary or in the interest of the parent

13. The making of contracts between the parent and the subsidiary that are more favorable to the parent

14. Observance of formal legal requirements

15. The existence of fraud, wrongdoing, or injustice to third parties

Plaintiff has come nowhere near carrying its burden of proving that Daebo and Shinhan are alter egos. Its complaint has only four paragraphs addressing its alter ego claim, and none support attachment.

In Paragraph 24 of the complaint it states that Daebo is a "Group Beneficial Owner" of ships. But footnote 7 shows that being a "Group Beneficial Owner" establishes nothing and may mean "the parent company of the Registered Owner, *or* the Disponent Owner if *the ship is owned by a bank* . . . ."[11] Also, "A Group Beneficial Owner may or *may not directly own ships itself* as a Registered Owner."[12] Plaintiff's own "evidence" shows that Daebo can be a "Group Beneficial Owner" and not be either the Registered Owner or the parent of the Registered Owner. The "Group Beneficial Owner" designation cannot support this attachment because it does not make it more likely than not that Daebo and Shinhan are alter egos.

---

[11] Complaint ¶ 24 & n.7.
[12] *Id.*

Paragraph 25 of the complaint does not support attachment either, stating "it is believed that Shinhan have directors and subscribers that have been nominated by Daebo . . . ."[13] Plaintiffs have not alleged common or overlapping directors or officers (No. 2 above), but merely that Daebo may have nominated directors.  Paragraph 25 cannot support attachment.

Paragraph 26 also fails to support attachment.  Plaintiff alleges, without evidence, that "Shinhan is a wholly-owned subsidiary of the larger shipping group – Daebo; and is nothing more than a bank or one-ship company vehicle set up by a bank."  Shinhan may be a bank or set up by a bank, but that doesn't mean that it is Daebo's alter ego.

In contrast, Plaintiff could have performed a quick Google search and found information like the following company overview from the website http://www.bloomberg.com/, which suggests that Shinhan provideshttp://www.bloomberg.com/ a wide range of financial services – much more than what a single shipping company would set up to protect its assets:

> Shinhan Capital Co., Ltd. provides various financial services. The company offers corporate finance services, including ship leasing services; ship purchasing and building loans; industrial and medical equipment, and heavy machinery leasing services; and corporate loans, such as factoring and short-term working capital loans. It also provides retail finance services comprising home lease loans, stock loans, auto leasing services, installment loans, and mortgage loans. In addition, the company offers investment finance services, including private equity management services, merger and acquisition financing, mezzanine loans, and capital restructuring investment services. Further, it invests in and provides loans for venture firms; underwrites convertible bonds, and bonds with warrants of listed companies; and provides management consulting services. Additionally, the company offers real estate project finance (PF) and real estate PF-related collateralized loans, as well as invests in social overhead capital and real estate funds. Shinhan Capital Co., Ltd. was founded in 1991 and is headquartered in Seoul, South Korea.[14]

---

[13] Complaint ¶ 25.
[14] Exhibit B.  http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=5554481 (accessed 2-20-15)

Further evidence of the separateness is provided by the IHS Maritime List of Shipowners & Managers.[15]  Shinhan is listed on page 931 as being the owner of ships operated by about forty different companies, including two Daebo companies.  The DAEBO TRADER is listed on page 226 under Daebo Shipping Co. Ltd along with five other ships.  Only one of the six ships shown has Shinhan as its registered owner.  It is simply implausible for a company that owns ships operated by forty different companies to be Daebo's alter ego created to perpetrate a fraud or to be carrying on Daebo's business instead of its own.

Plaintiff's attachment must fail because it has presented no evidence that Daebo used Shinhan to perpetrate a fraud or hide assets. The fact that Daebo allegedly breached a contract with the Plaintiff does not justify disregarding Shinhan's valid, separate and distinct corporate identity to make it liable for Daebo's alleged debt. Plaintiff cannot meet its burden of proving that Daebo has an attachable interest in a ship owned by a separate company.

**Daebo's reorganization proceeding will make the attachment futile.**

While Plaintiff's attachment must fail because it has no evidence that Shinhan is an alter ego of Daebo, Daebo's reorganization proceeding will make the attachment futile after it is recognized in the U.S.  As indicated by Exhibits D and E, Daebo applied for the equivalent of Chapter 11 reorganization in Korea on February 11, 2015.[16]

Even if Daebo were the ship's owner, its rehabilitation proceeding will likely make the attachment futile.  For example, in *Evridiki Navigation, Inc. v. The Sanko Steamship Co., Ltd.*,[17] plaintiffs attached a ship to recover charter hire claims against Sanko.  The court granted a motion to vacate the attachments because Sanko's bankruptcy reorganization plan included the

---

[15] Exhibit C, 2013-2014 Edition extract.
[16] Exhibit D, email dated 2-21-15 forwarding notice from Daebo of its rehabilitation proceeding; Exhibit E, Skuld P&I Club advisory published 2-20-15 regarding Daebo's rehabilitation proceeding (http://www.skuld.com/topics/legal/defence/daebo-international-co-ltd---rehabilitation-proceedings-in-korea/ )
[17] 880 F. Supp. 2d 666, 2012 AMC 1817 (D. Md. 2012).

comprehensive discharge of all charter hire claims against defendant, such as those advanced by the attaching plaintiffs. It appeared inevitable that those claims would never be adjudicated in that court, regardless of whether the attachments were sustained. Here, the Court's jurisdiction will be stayed once the petition for recognition is filed and Daebo seeks injunctive relief until the recognition order is entered, at which time the bankruptcy stay will become effective. Also, it is very unlikely that the attachment could provide any real security for Plaintiff's claims because the Court will likely never have the ability to sell the vessel or convey any interest in her to the plaintiff after injunctive relief or the stay takes effect.

## CONCLUSION

In short, Plaintiff cannot justify its attachment of the M/V DAEBO TRADER to secure its claim against Daebo. Plaintiff's attachment of the bunkers should, therefore, be vacated, at Plaintiff's costs.

Respectfully submitted,

 */s/ A. T. Chenault*
A. T. CHENAULT (20747)
SUSAN KELLER-GARCIA (30574)
**FOWLER RODRIGUEZ**
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705
E-mails: atc@frfirm.com
skgarcia@frfirm.com
Counsel for Dana Shipping and Trading S.A.

**CERTIFICATE OF SERVICE**

I hereby certify, this 23rd day of February, 2015, that I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel on record.

*/s/ A. T. Chenault*