# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RICHARDSON STEVEDORING & | * | |
| LOGISTICS SERVICES, INC. | * | CIVIL ACTION |
| Plaintiff, | * | |
| | * | NO. 15-0490 "F" (2) |
| VERSUS | * | |
| | * | JUDGE FELDMAN |
| DAEBO INTERNATIONAL SHIPPING CO. LTD. | * | |
| AND SHINHAN CAPITAL CO. LTD. | * | MAGISTRATE WILKINSON |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*
THIS PLEADING RELATES TO CIVIL ACTION \*
NO. 15-0490 AND CIVIL ACTION NO. 15-494 \*
\*     \*     \*     \*     \*     \*     \*     \*

## JOINT MEMORANDUM IN OPPOSITION TO MOTION TO VACATE

Plaintiffs Richardson Stevedoring & Logistics Services, Inc. ("Richardson") and SPV 1 LLC ("SPV")[1] ("SPV"; collectively, "Plaintiffs"), each appearing through their undersigned counsel, respectfully urge the Court to deny non-party Dana Shipping and Trading S.A.'s ("Dana Shipping") Motion to Vacate on the grounds that Dana Shipping lacks legal standing to challenge the Writs of Attachment issued by the Court and that, even if it had standing, would lack any legal basis for the relief requested.[2]

---

[1] SPV 1 LLC is the Plaintiff in related Civil Action No. 15-0494. In anticipation that that suit will be consolidated with that above captioned and earlier filed suit, SPV and Richardson offer this Memorandum in Opposition jointly. Out of an abundance of caution, however, it is filed in both suits.
[2] Plaintiffs incorporate by reference into this Opposition any further arguments (and evidence) submitted by American Marine Services, Inc. in Civil Action No. 15-496 in response to Dana's Motions to Vacate the attachment in that case.

## <u>INTRODUCTION</u>

Movant, Dana Shipping, neither owns nor claims any recognizable interest in the M/V DAEBO TRADER ("DAEBO TRADER" or the "Vessel").  Nonetheless – and despite the pendency for more than a week of the Court's writs of attachment against the Vessel – Dana Shipping is the only entity that has appeared to address the Vessel's attachment.  Toward that end, Dana Shipping makes myriad allegations regarding Daebo International Shipping Co., Ltd. ("Daebo") and Shinhan Capital Co., Ltd. ("Shinhan") – allegations which Dana Shipping has no basis for asserting, and which are belied by its own evidentiary submissions.  Meanwhile, Daebo and Shinhan – one of which is beyond dispute the true owner of the DAEBO TRADER, and both of which could presumably offer conclusive evidence of the Vessel's ownership structure – are conspicuously absent.

As set forth below, a fundamental purpose of Admiralty Rule B is to compel the appearance of a non-resident defendant by seizing its property within the jurisdiction of the Court.  To enforce that purpose, the Court should refuse to release the DAEBO TRADER from attachment until, at an absolute minimum, some party claiming a recognizable interest in the Vessel requests such relief.  This is particularly true where, as here, claims exceeding $2.0 Million have been asserted against the property from three separate parties who together have compiled considerable evidence in support of their allegations without being afforded even a scintilla of discovery.

## BACKGROUND

**A.      Daebo's Purchase of the M/V DAEBO TRADER.**

Daebo purchased the M/V DAEBO TRADER on or about August 23, 2007, for the price of $71 Million.[3]  Daebo's acquisition was publically confirmed to industry news sources by its President, Nho Jae Young[4], who indicated that Daebo intended as owner to fix the vessel to a 1-2 year charter:

> Daebo president Nho Jae Young confirms the purchase of the Namura-built vessel and that it is scheduled for delivery in November or December.
>
> Market players say Daebo has renamed the ship Daebo Trader and fixed it out to another South Korean company for 11 to 13 months at $57,000 per day or $20.5m for the charter period….
>
> However, Nho says the Daebo Trader has not been fixed out. "We are in contact with charterers over the fixture of the panama bulker for one to two years period but nothing has been finalised yet," said Nho.[5]

Despite public acknowledgement by Daebo's President that it had purchased the DAEBO TRADER, Daebo never became the vessel's registered owner.  Rather, when delivery of the vessel finally occurred and flag state registration was submitted, that honor went to Shinhan Capital Co., Ltd. ("Shinhan"), who took *registered* ownership of the Vessel directly from her previous owner without any mention of Daebo.[6]

The glaring discrepancy between Daebo's public statements affirming its ownership of the Vessel, and the official records listing Shinhan as the *registered* owner, is clarified by the

---

[3] Korea's Daebo buying and chartering panamax tonnage.  Tradewinds News article dated August 23, 2007, attached as Exhibit A.

[4] *See* Company Detail Report for Daebo Shipping Co. Ltd., attached as Exhibit B, p. 3 (confirming "Nho Jae Young" as President of Daebo);

[5] *Id.*

[6] *See* Equasis History for M/V DAEBO TRADER, attached as Exhibit C; IHS Sea Web Report from Lloyd's Register – Fairplay for the M/V DAEBO TRADER, attached as Exhibit D (identifying Daebo as the Vessel's group owner, operator, and manager from that point forward)

South Korean state's Certificate of Registry for the Vessel.  According to a certified transcription of the Vessel's Registry Record performed by the Central Registered Information Office of the Ministry of Court Administration, when Shinhan became the "registered" owner of the Vessel on January 4, 2008, Daebo as **"Debtor"**[7] took on two mortgages against the Vessel totaling more than $55 Million.[8]  The first priority mortgage, which reflects Daebo borrowing the sum of $31.5 Million, was recorded in favor of Shinhan's parent bank, Shinhan Bank Co., Ltd. ("Shinhan Bank").[9]  Thus, just as publically announced by Daebo, Daebo was in fact the true owner of the Vessel, albeit subject to mortgage interests held by the banks who lent Daebo the capital required to purchase the Vessel. In effect, Daebo was in direct control of the day-to-day ownership decisions, operation, and management of the Vessel, including its movements and the cargo it carried, while at the same time perpetuating a fraud against potential creditors by orchestrating the registration of the Vessel in the name of its lender.

As alleged in SPV's and Richardson's Verified Complaints, on January 5, 2010, Daebo Shipping Co., Ltd. merged with Daebo International Shipping Co., Ltd.[10]  That same day, this change in Daebo's internal structure was recorded on the Vessel's certificate of mortgages, where Daebo International Shipping Co. Ltd. was substituted for Daebo Shipping Co., Ltd. as the debtor for both outstanding mortgages.[11]

---

[7] Dana Shipping's contention that Daebo does not own the DAEBO TRADER begs the question: "What did Daebo Shipping do with the $55 Million in cash it received from Shinhan if it wasn't used to purchase the DAEBO TRADER?"

[8] Certificate of Entire Registered Items for M/V DAEBO TRADER of Jeju City, Jeju Special Province (39056 Tons), attached as Exhibit E.

[9] *Id.*

[10] *See* SPV's Verified Complaint, Doc No. 1 in Civ. Action No. 15-0494, ¶ 18 n.1; Richardson's Verified Complaint, Doc No. 1 in Civ. Action No. 15-0490, ¶ 6 n.1.  *See also* Affidavit of Hong-Il Moon, attached as Exhibit F.

[11] *See* Exhibit E.  A strikethrough was used to indicate the removal of Daebo Shipping Co. Ltd. as Debtor when, on January 5, 2010, Daebo International Shipping Co., Ltd., assumed the debt.

**B.     Daebo's default of its obligations to Plaintiffs and Plaintiffs' attachment of the M/V DAEBO TRADER.**

As set forth in SPV's and Richardson's respective Verified Complaints, in late 2014 Daebo began to default on its contractual operations, causing considerable losses to its counterparties such as SPV and Richardson.  Daebo's failures to adhere to its contractual obligations include, *inter alia*: failing to pay for stevedoring services provided by Richardson to Daebo-operated vessels in the Ports of Houston, Texas and Mobile, Alabama; failing to pay charter hire for its continued use of the M/V KACEY, a vessel owned by SPV; and failing to pay for necessaries consumed by the KACEY during Daebo's charter.  Through these failures, Daebo has inflicted upon SPV and Richardson collective damages exceeding $2.0 Million.

On February 14, 2015, Richardson became the first creditor of Daebo's to file an action in this District praying for attachment of Daebo's vessel, the DAEBO TRADER.[12]  Based on information available at the time, Richardson alleged: that Daebo was the reported group owner, ship manager, and operator of the M/V DAEBO TRADER;[13] that Daebo was the reported disponent owner of Shinhan;[14]  that Daebo and Shinhan act as a single business entity; that Shinhan is "nothing more than a bank *or* one-ship company vehicle set up by a bank," and that Shinhan is a "brass plate" company created on paper to legally own a ship and possibly limit the liability for Daebo, which is the 'real' and/or 'beneficial' owner."[15]  Richardson's Verified Complaint further averred that "Shinhan's registered ownership of the M/V DAEBO TRADER

---

[12] *See* Richardson's Verified Complaint, Doc. No. 1 in Civ. Action No. 15-0490.

[13] *Id.* at ¶ 6.

[14] *Id.* at ¶ 24.

[15] *Id.* at ¶¶ 25, 26.

should be disregarded," and that "Daebo… is in reality the true and beneficial owner of the M/V DAEBO TRADER."[16]

On February 15, 2015, on the basis of Richardson's allegations, this Honorable Court signed an Order directing the Clerk of Court to issue process of maritime attachment against assets of Daebo, including the DAEBO TRADER.[17]

The following day, February 16, 2015, SPV filed its own lawsuit against Daebo for losses related to Daebo's breach of the charter party of SPV's vessel, the M/V KACEY.[18]  SPV alleged, as Richardson had, that Daebo was the true owner of the DAEBO TRADER notwithstanding Shinhan's appearance as "registered owner," and that Shinhan's registered ownership should be disregarded in order to recognize the economic and practical reality, *to wit*, that Daebo owns the Vessel.  Upon the Court's opening following the President's Day and Mardi Gras holidays, this Honorable Court issued a second order commanding the attachment of the DAEBO TRADER in SPV's lawsuit against Daebo.  Both writs issued by the Clerk of Court were physically served on the DAEBO TRADER on or before February 18, 2015.[19]

On the afternoon of February 23, 2015, Motions to Vacate were filed in each of the suits in which the DAEBO TRADER has been attached.  Notably, these motions were filed not by Shinhan or Daebo – the named defendants and alleged registered and functional owner of the vessel, respectively – but by Dana Shipping, a company which claims no interest whatsoever in

---

[16] *Id.* at ¶¶24, 26.  *See also*, ¶¶ 24, n. 7, referencing Lloyd's Register – Fairplay Data Definition for a "Group Beneficial Owner" such as Daebo in the instant case, rendering it "the parent company of the Registered Owner, *or the Disponent Owner if the ship is owned by a bank – It is the controlling interest behind its fleet and the ultimate beneficiary from the ownership.* A Group Beneficial Owner may or may not directly own ships itself *as a Registered Owner*. It may be the Manager of its fleet, which is in turn owned by subsidiary companies."

[17] Order granting Motion for Writ of Attachment and Garnishment, Rec. Doc. 2 in Civ. Action No. 15-0490.

[18] Verified Complaint, Rec. Doc. 1 in Civ. Action No. 15-0494.

[19] In accordance with the custom and practice of the U.S. Marshal for the Eastern District of Louisiana, the relevant river pilots' associations were informed on February 15 that the DAEBO TRADER was not to leave the district.  On information and belief, the Master of the DAEBO TRADER became aware of the seizure shortly thereafter.  A deputy U.S. Marshal then physically served the writ on the Master on February 18, when the Marshal's staffing allowed.

the vessel but merely objects to its detention as a charterer with commercial concerns arising from the seizure.  Notably, the very first sentence of the charter party between Daebo and Dana Shipping attached in support of vacatur contradicts Dana Shipping's primary argument, *to wit*, that Shinhan owns the Vessel:

> THIS CHARTER PARTY, made and concluded in Athens [on this] 9th day of September, 2014, **between <u>Daebo International Shipping Co., Ltd., Seoul-Korea, Owners of the good Motorship "DAEBO TRADER"</u>… now trading, and Dana Shipping and Trading S.A., Charterers** of the City of Majuro, Marshall Islands.[20]

Indeed, in the week or more since the vessel was attached by the U.S. Marshal neither Shinhan nor Daebo have taken any steps whatsoever to address the seizure of the Vessel, nor has either contacted any of the attaching parties.[21]  This is especially surprising given the fact that Daebo has very recently appeared in another matter in this District on December 24, 2014, where it initiated its own Admiralty Rule B attachment.[22] As some combination of "registered owner," "owner-in-fact," "group owner," "disponent owner," "purchaser," "debtor," "mortgagor" ***and*** "affiliated mortgagee" – their absence is glaring, their silence is deafening, and neither should be overlooked by this Court.

Because Daebo is the Vessel's true and beneficial owner, the attachments of the DAEBO TRADER for claims against Daebo were absolutely proper and should be maintained. Moreover, SPV and Richardson have met all statutory and procedural requirements for each of their respective attachments, and have offered more than sufficient allegations and evidence to meet their burden at this early stage of proceedings.

## <u>LAW AND ARGUMENT</u>

---

[20] *Id.*

[21] Both of the undersigned attorneys of record for Plaintiffs have verified this statement with counsel for American Marine Services, Inc., Plaintiff in Civ. Action No. 15-496.

[22] *See* Cause No. 2:14-cv-02959, *Daebo Int'l Shipping Co., Ltd. v. Navision Shipping Company A/S et al.*, in the United States District Court for the Eastern District of Louisiana.

## I.      Rule E(4)(f) Standard

Numerous courts, including this very Court, have recognized that a Supplemental Rule B attachment should issue upon a showing that: (1) the plaintiff has alleged a valid prima facie admiralty claim; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.[23]

When confronted with a motion to vacate a Rule B attachment, courts within this district adhere to the test set forth by the Second Circuit Court of Appeals in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*[24] In *Aqua Stoli*, the court emphasized that "*Rule B* specifies the **sum total** of what must be shown for a valid maritime attachment."[25]  Further, it is well settled that a Rule E(4)(f) hearing "is not intended to definitively resolve the dispute between the parties."[26] Accordingly, "maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing."[27]  Rather, to meet its burden in a Rule E(4)(f) hearing, the attaching party is merely required "to make a *prima facie* showing that it is entitled to the damages sought and secured by the arrest and attachment."[28]  In addition, while courts routinely consider evidence presented

---

[23] *Aqua Stoli Shipping Ltd. V. Gardner Smith PTY Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006); *Koninklijke Boskalis Westminster NV v. Mediterranean Shipping Coo S.A.*, No. 07-2796 (June 11, 2007 E.D.La.) (applying the *Aqua Stoli* standard to a motion to vacate attachment involving allegations of alter ego liability); *Dorval Kaiun K.K. v. Arion Shipping Ltd.*, No. CIV.A.08-1176, 2008 WL 687273, at *1 (E.D.La. Mar. 10, 2008).

[24] *E.g., Arion Shipping Ltd.*, 2008 WL 687273 at *1 (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006)).

[25] *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870, at *17 n. 7 (S.D.N.Y. 2006) (*citing Aqua Stoli*, 460 F.3d at 447)).

[26] *A. Coker & Co. Ltd. v. National Shipping Agency Corp.*, No. CIV.A.99-1440, 1999 WL 311941, at *1 (E.D.La. May 17, 1999) (*citing Salazar v. Atlantic Sun*, 881 F.3d 73, 79-80 (3rd Cir. 1989); *Continental Ins. Co. v. Adriatic Tankers Shipping Co.*, 1995 WL 649942 (E.D.La. 1995); *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F.Supp. 1423, 1427 (M.D.Fl. 1997)); *Seatrade Group N.V. v. 6,785.5 Metric Tons of Cement*, 2005 WL 3878026, at *2 (S.D.Tx. Dec. 7, 2005).

[27] *Ronda Ship Mgmt. Inc. v. Doha Asian Games Organizing Comm.*, 511 F.Supp.2d 399, 404 (S.D.N.Y. 2007) (*citing SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-15375(KMK), 2007 WL 831810, slip op. at *3 (S.D.N.Y. March 15, 2007)),

[28] *Seatrade Group*, 2005 WL 3878026, at *2.

outside of the complaint at a Rule E(4)(f) hearing, "a plaintiff seeking a maritime attachment need not provide any supporting evidence… [and] *Aqua Stoli* implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, to carry its burden under Supplemental Rule E(4)(f)."[29]

## II.     Dana Shipping has no standing to challenge the Rule B writ of attachment.

Admiralty Rule E(4)(f) explicitly addresses who may initiate a motion to vacate a writ of foreign attachment, limiting that right to those with an interest in the property under attachment:

> (f)      *Procedure for Release from Arrest or Attachment*: Whenever property is arrested or attached, ***any person claiming an interest in it*** shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.[30]

Relying on this clear language, this Court has previously rejected attempts by non-parties to vacate maritime attachment orders where the non-party disclaimed an ownership interest in the vessel.  In *Probulk Carriers, Ltd. v. Daewoo Logistics Corp.*, a creditor of Daewoo Logistics Corp. ("Daewoo") obtained a writ of foreign attachment of the M/V DAEWOO ACE based on the allegation in its verified complaint that the vessel was owned by the defendant, Daewoo.[31] The very next day, Daewoo moved to vacate the writ arguing that the attachment was improper because Daewoo did not own the vessel, did not own any property onboard the vessel, and was not the beneficial owner of the vessel.[32]   To support its argument, Daewoo submitted: (1) an unsworn statement by the head of its Insurance and Legal Affairs Team affirming that Daewoo was not the owner of the DAEWOO ACE; and (2) a Korean Certificate of Registration showing

---

[29] *Tide Line*, 2006 U.S. Dist. LEXIS 95870 at *16.

[30] Fed. Rule Civ. Proc. Supp. E(4)(f).

[31] *Probulk Carriers Ltd. v. Daewoo Logistics Corp.*, 2009 WL 700687 (E.D.La. 2009).

[32] *Id.* at *3.

that KDB Capital Corp. – a self-described "credit specialty company" owned by a Korean bank – was the registered owner of the vessel.[33]

Following the "emergency hearing" requested by Daewoo, the Court denied Daewoo's Motion to Vacate upon finding that Daewoo lacked standing under Admiralty Rule E(4)(f) to challenge the attachment.[34]  As the Court recognized:

> [Rule E(4)(f)]  gives to "any person claiming an interest" in the attached property the ability to vacate an attachment.  Daewoo Logistics argues that it has no interest in the vessel.  Daewoo Logistics is not a party entitled to vacate the attachment as it is not a party claiming an interest in the vessel.[35]

The circumstances here are nearly identical to those in *Probulk*, with the notable exception that in *Probulk* a named defendant appeared and sought release of the vessel, whereas here vacatur is requested by a non-party, Dana Shipping.  Under the plain language of Admiralty Rule B and the Court's prior decision in *Probulk*, Dana Shipping cannot challenge the attachment under a rule crafted for the benefit of "any person claiming an interest" in the vessel while simultaneously disclaiming any interest in the vessel.

Perhaps anticipating that its standing would be questioned, Dana Shipping summarily asserts in its Motion to Vacate that it "has an interest ***in this matter***" on the basis of its charter of the DAEBO TRADER.[36]   However, Rule E(4)(f) explicitly addresses standing and speaks plainly in terms of parties with an interest ***in the attached property*** – not merely an interest in the dispute.  Plaintiffs respectfully suggest that strict application of Admiralty Rule E(4)(f) in favor of those who claim an actual interest in property best serves the Rule's purpose of compelling the owners of attached property to appear and answer the claims against them, rather than having

---

[33] *Id.  See also* Motion to Vacate Attachment and Request for Emergency Hearing, Rec. Doc. 11 in Civil Action No. 09-3027, at Exhs. A-B; KDB Capital Corp. website,
http://www.kdbcapital.co.kr/english/about/introduction/introduction.html.

[34] *Probulk*, 2009 WL 700687 at *1-2.

[35] *Id.*

[36] Dana Shipping Motion to Vacate, Rec. Doc. 12-1, p. 2.

their property defended by proxy in order to avoid the obligations (*to wit,* participation in discovery) that *in personam* appearance would require.  This Court should not allow Defendants to evade Rule B jurisdiction in this case by countenancing such tactics.

Toward that end, Plaintiffs note with interest that on the first business day following the *Probulk* Court's denial of the disinterested party's Motion to Vacate, the registered owner of the attached vessel appeared and assumed the defense of its property.[37]  Plaintiffs urge the Court to enforce Rule E(4)(f) in exactly the same fashion in order to compel exactly the same result – the appearances of Daebo and/or Shinhan.

## III. Plaintiffs have provided the Court with more than enough to make a prima facie showing of Daebo's effective ownership of the DAEBO TRADER to sustain the attachment under Rule E(4)(f).

Dana Shipping's primary argument in favor of vacatur of the attachment of the Vessel (in which it claims no interest) is its position that SPV and Richardson have not pled sufficient indicia of alter ego to support their Admiralty Rule B claims.  In  making this argument, Dana Shipping overlooks the fact that SPV and Richardson both alleged, in addition to alter ego status, that Daebo is the true, legal and beneficial owner of the Vessel, that Shinhan's registered ownership should be disregarded as a sham, and that Shinhan is "nothing more than a bank" responsible for financing but lacking true indicia of ownership.  Ignoring these allegations and their legal effect, Dana Shipping asks the Court to limit its inquiry to but one fact, *to wit*, that Shinhan, rather than Daebo, is the "registered owner" of the DAEBO TRADER.  However, federal jurisprudence has repeatedly recognized such a short-sighted focus ignores the realities of the shipping industry and is simply improper.

---

[37] *See* E.D.La. Docket No. 09-3027. Following the Court's denial of non-owner Daewoo's Motion to Vacate on Friday, March 13, 2009, the vessel's registered owner, KDB Capital Corp., appeared on Monday, March 16, 2009.

In *Lykes Bros. Steamship Co. v. American President Lines, Ltd.,* the district court for the Middle District of Florida, relying on Fifth Circuit authority, explicitly recognized that recordation of title to a vessel is a poor indicator of the vessel's true ownership:

> It should be noted at the outset that it is a well-accepted and established proposition that the record title is not conclusive as to ownership of a vessel. The structuring of a financing agreement in the shipping industry is not novel and the vehicle of a bareboat charter was frequently used as part of a financing transaction. As noted by the Ninth Circuit, such arrangement has been a common method of ship financing since World War II.[38]

The *Lykes Bros.* court was confronted with a vessel sale agreement in which a cash-poor vessel owner, in exchange for a sizeable infusion of capital, purported to transfer title in four vessels to a "financier" who "clearly had never been nor intended to engage in the shipping business."[39] The financier then leased the vessel back to her owner pursuant to a long-term bareboat charter agreement.[40] The original owner continued to operate the vessel, making "charter hire" payments to the financier until it could exercise a purchase option to re-acquire title to the vessels.

The original owner eventually declared bankruptcy and brought a claim as debtor-in-possession seeking to have the sale-leaseback agreement recognized as a financing transaction, rather than a true sale. After looking in detail at the economic realities surrounding sale and leaseback, the court agreed that it was a disguised financing agreement. Consequently, the court held on summary judgment that "the Owner Participation Agreement and the Bareboat Charters were, as a matter of law, not leases at all but financing arrangements and, therefore the

---

[38] *In re Lykes Bros S.S. Co., Inc.*, 196 B.R. 574, 580 (M.D.Fl. 1996) (citing *Interpool Ltd. v. Char Mingh Marine (Panama) S.A.*, 890 F.2d 1453, 1460 (9th Cir. 1989); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull Number 01*, 625 F.2d 44 (5th Cir. 1980); *The Kitty C.*, *Hull Number 01*, 20 F.Supp. 173 (S.D.Fl. 1937).

[39] *Id.* at 585.

[40] *Id.* at 577-78.

ownership interest remained in Lykes and the four Pacific-class, L-9, vessels are still owned by Lykes," the original owner.[41]

In reaching this determination, the court engaged in a broad, fact-intensive analysis of the transaction by which the registered owner had purportedly acquired title in the vessels, focusing on the following factors:

1) Which party bore the risk of loss during the term of the lease.

2) Whether the so-called "lessor" had any input on the selection of the equipment and its purchase.

3) Which party was required to pay taxes and to maintain the "leased" equipment.

4) Whether the agreement grants to the "lessor" the right to accelerate the rents due over the remainder of the lease term, to sell the collateral, and to hold the "lessee" liable for any deficiency.

5) Whether the "lessor" was in the business of leasing.

6) Whether the "lessee" was required to be responsible for all liability related to the equipment and to indemnify the "lessor" against all losses.

7) Whether the "lessee" was required to maintain insurance on the property.

8) Whether the equipment was custom designed for the "lessee's" use.

9) Whether the equipment would have significant value to other uses or, because of the peculiar nature of the equipment or because it was difficult to remove after installation, the equipment would have less value to a subsequent user.

10) Whether the "lessee's" payments were not calculated to compensate for use but rather to insure a return on investment.

11) Whether the initial purchase price, in a sale/leaseback transaction, was related to the value of the assets.

---

[41] *Id.* at 585.

13

12) Whether the transaction was structured as a lease to secure tax advantages.[42]

As a practical matter, it is far too early at this stage to address many of the above factors – in particular, those which would require perusal of the agreement(s) between Daebo and Shinhan, which are unavailable to Plaintiffs due to Shinhan and Daebo's curious failure to respond in any manner to the pending vessel attachment.  As a legal matter, though, such an in-depth inquiry would be improper regardless, as Rule E(4)(f) does not require Plaintiffs to prove their claims at this stage nor to even submit evidence in support of their claims.  Nonetheless, those elements which may presently be addressed and the evidence available to Plaintiffs at this stage offer a compelling case that Shinhan's registered ownership of the vessel should be disregarded and Daebo's ownership interest recognized.

First, there is little question given statements in Dana Shipping's motion and the Certificate of Registry of the Vessel that – if Daebo is not the outright owner of the Vessel - there is at minimum a sale-leaseback agreement in operation between Daebo and Shinhan.[43]  It is well-established by Daebo's own public statements that it "purchased" the DAEBO TRADER, and by official documents that at the time Daebo "purchased" it became the "Debtor" and Shinhan's parent bank the "Mortgagee" with regards to the first $31.5 Million in secured financing of the Vessel.[44]   In addition, according to Dana Shipping's own arguments and

---

[42] *Id.* at 582-83.

[43] Indeed, it is a matter of public record that Shinhan and Shinhan Bank engaged in a joint effort whereby the former, working with small sized Korean shipowners, obtains financing from the later for secured purchases of vessels .  In an article entitled "The Landscape of Ship Finance in Korea," attached as Exhibit ___, Meeyoung Choi, Managing Director of Meriel Partners, observed: "Among the firms active in ship financing, Korea Development Bank (KDB) and Shinhan Bank are at the forefront, representing slightly more than two-thirds of the country's maritime loan portfolio.  Current terms available from local banks include senior facilities of 3-5 years after delivery, with approximately 50-70% LTV.  The margin requirement has decreased substantially compared to a year ago, and now stands between 210-350 bp over LIBOR.  Two leasing companies are active in the Sector (Shinhan Capital and KDB Capital), both of which focus on rather small sized Korean Shipowners."  *See* Marine Money Offshore Article, attached as Exhibit G

[44] *See* Certificate of Registry, attached as Exhibit E.

exhibits, Dana Shipping entered into a charter party that identifies Daebo as M/V DAEBO TRADER's owner, indicating Daebo does in fact exercise dominion and control over the Vessel and hold itself out to charterers as the Vessel's true owner.[45] This well-nigh establishes, if not confirms, the purchase, financing, and charter-back of the vessel, exactly as in *Lykes Bros.*

Second, Daebo President Nho Jae Young's public remarks regarding Daebo's purchase of the Vessel tend to suggest that Daebo – not Shinhan – selected the DAEBO TRADER for purchase rather than some other vessel.  Indeed, to conclude otherwise would insinuate that a bank or capital lending company chosen by Daebo to finance purchase of the Vessel (i.e., Shinhan) exercised greater control over ship selection than Daebo itself in committing to own and operate it.

Third, as Dana Shipping's own exhibits validate that Shinhan is a financing company, not a company traditionally focused on maritime commerce, trade, or shipping, and thus is not a vessel owner in any real sense.[46]  Shinhan instead "provides various financial services… including ship leasing services; ship purchasing and building loans," along with an extensive menu of other capitalization type services.  As Shinhan Group's website describes it, Shinhan "specializes in various loan/credit business such as facility leases, installment financing, new technology business financing, corporate restructuring-related business, real estate project financing, factoring and general loans."[47]

Fourth, the DAEBO TRADER's Protection & Indemnity coverage (*i.e.*, marine insurance) is provided by The Steamship Mutual Underwriting Association (Bermuda)

---

[45] *See* Daebo-Dana Shipping Charter Party, attached as Exhibit H.

[46] *See Icon Amazing, LLC v. Amazing Shipping, Ltd. et al.*, 951 F.Supp.2d 909, 915 (S.D. Tex. 2013) (finding sale/lease-back/sale transaction involving borrower's vessel was a vessel sale/financing contract where financing company, not a company traditionally focused on maritime commerce, trade, or shipping, and vessel was sold to financing company, then leased and eventually sold back to the shipping company that originally purchased the vessel).

[47] Shinhan Capital at www.shinhangroup.com/en/introduce/groupintroduce1_06.jsp

("Steamship Mutual").   Steamship Mutual's coverage is provided in favor of Daebo – *not* Shinhan – and Daebo is listed as the "Member," which is the maritime equivalent of the term "Insured."[48]   In addition to satisfying the seventh *Lykes Bros.* factor, this is strong evidence of Daebo's de-facto ownership of the Vessel as it would be unheard of for Shinhan not to maintain her P&I club entry if Shinhan were her true owner.   Finally, Daebo's entry with Steamship Mutual is also redolent of Daebo's responsibility for all liability related to the equipment and bore the risk of loss with regard to same and, therefore, provides foundation for the first and sixth *Lykes Bros.* factors as well.

Moreover, the realities of Daebo's connection to the DAEBO TRADER even beyond the specific factors enumerated in *Lykes Bros.* demonstrate that Daebo acquired and retained actual ownership and control of the Vessel through its financed purchase.   In that regard:

1) There is no question that Shinhan Bank lent, and Daebo borrowed, $31.5 Million on the date the Vessel was purchased, or that this loan was secured by a mortgage in favor of Shinhan Bank and against Daebo.   Given those facts, and the inescapable bounds of common sense, the only conceivable explanation is that Shinhan Bank financed Daebo's purchase of the vessel.   Dana Shipping's scenario - that Daebo brought nothing to the table and left with a $31.5 Million loan secured by a property of the bank's subsidiary property - is simply nonsensical.

2) **If Shinhan were the true owner of the Vessel,** then the primary mortgage on the Vessel would be legally improper.   Shinhan and Shinhan Bank – the "registered owner" and holder of the primary mortgage against the DAEBO TRADER (*i.e.*, the mortgagee),

---

[48] *See* Steamship Mutual Entry, attached as Exhibit H.

respectively – are both wholly owned subsidiaries of Shinhan Financial Group.[49]  Under well-settled general maritime law, "an owner, part owner or joint venture cannot hold a maritime lien" against its own property.[50]  As subsidiaries of the same financial group, Shinhan and Shinhan Bank would at a minimum be joint venturers as to any transaction in which Shinhan Bank provides capital for and obtains a mortgage lien for property acquired by Shinhan.  Accordingly, if Shinhan were to adopt Dana Shipping's position as to its alleged ownership of the DAEBO TRADER, it would likely waive a multi-million dollar mortgage lien in favor of its sister company by doing so.

3) In its audited financial report, Korea South-East Power Co., Ltd., lists as a "long term marine transportation commitment" an agreement with Daebo for carriage of cargoes of bituminous coal on the M/V DAEBO TRADER spanning from November 2008 through October 2023.[51]  As a mere charterer, it would be wholly impractical, infeasible, and extremely unlikely that Daebo could attain, acquire, or facilitate a fifteen (15) year commitment for the specific vessel unless Daebo owned and controlled her directly itself.

4) Finally, and most notably, Daebo holds itself out to be the "Owner" of the DAEBO TRADER – a fact which should carry great weight, as it signals to the world that Daebo did not intend its agreement with Shinhan to transfer ownership of the Vessel to Shinhan. This outward representation by Daebo is evident in its charter party with Dana Shipping, in its public statements reported in industry news sources, and in its entry of the Vessel for insurance purposes with Steamship Mutual.

---

[49] *See* Shinhan Financial Group: Companies in the Group, available at www.shinhangroup.com/en/introduce/groupintroduce1.jsp.

[50] *E.g.*, *Comar Marine Corp. v. Raider Marine Logistics, LLC*, 2013 WL 2181036 (W.D.La. 2013) (citing *Sasportes v. M/V SOL DE COPACABANA*, 581 F.2d 1204, 1208 (5th Cir. 1978)).

[51] *See* Korea South-East Power CO., Ltd. Separate Financial Statements dated December 31, 2013, attached as Exhibit I, p. 95.  In the interest of avoiding unnecessarily lengthy attachments, irrelevant pages of this lengthy Financial Statements are excluded.

Here, especially in light of the preliminary nature of these proceedings, SPV and Richardson have offered more than sufficient allegations and evidence that Daebo is the true, legal, and beneficial owner of the DAEBO TRADER.  Accordingly, the writs of attachment must be sustained under Admiralty Rule E(4)(f), and SPV and Richardson should be afforded a full and fair opportunity to conduct discovery, argue the merits of their suits, and if necessary compel the sale of the DAEBO TRADER to satisfy their claims against Daebo.

## IV.   Daebo's Korean bankruptcy proceeding does not present an obstacle to the attachment of its vessel in the U.S.

Dana Shipping argues, in the alternative, that SPV's and Richardson's attachments should be vacated because Daebo has commenced a reorganization proceeding in South Korea, which Dana Shipping contends "will likely make the attachment futile" "*after it is recognized*." Dana Shipping suggests that the Court's jurisdiction "will be stayed" if Daebo files a Chapter 15 proceeding, and that it is therefore "very unlikely that the attachment could provide any real security for Plaintiff's claims because the Court will likely never have the ability to sell the vessel…."

SPV and Richardson have filed their lawsuits to recover damages which exist in the present and to pursue rights that are already vested, perfected, and actionable.  Respectfully, no judicial authority supports the denial of SPV and Richardson the opportunity to even pursue those rights on the basis of future actions that the defendant "might" take and the "likely" effects of those action.  Accordingly, unless and until Daebo's foreign bankruptcy is recognized, *and* Daebo opts to file a domestic Chapter 15 proceeding, *and* a competent court rules that such Chapter 15 warrants recognition in the U.S., *and* such court addresses the effect of that hypothetical proceeding on SPV's and Richardson's rights, this Honorable Court should permit SPV and Richardson to pursue their rights to the fullest extent available under the law.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   *s/ Michael M. Butterworth*
_____
Michael M. Butterworth (#21265)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
**ATTORNEYS FOR PLAINTIFF
RICHARDSON STEVEDORING &
LOGISTICS**


<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the above and foregoing pleading was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants on this 25th day of February, 2015.


*s/ Michael M. Butterworth*
_____
MICHAEL M. BUTTERWORTH

19