UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RICHARDSON STEVEDORING                           CIVIL ACTION
& LOGISTICS SERVICES, INC.

v.                                               NO. 15-490
                                                 c/w 15-494,
                                                     15-496

DAEBO INTERNATIONAL SHIPPING CO. LTD., ET AL.    SECTION "F"


ORDER AND REASONS

Before the Court are three virtually identical motions to vacate filed in these consolidated cases: Dana Shipping and Trading S.A., the time charterer of the seized vessel, the M/V DAEBO TRADER, seeks to vacate the maritime attachment of the vessel; orders granting motions for writ of foreign attachment were issued in three cases, Civil Action Numbers 15-490, 15-494, and 15-496. For the reasons that follow, the motions to vacate are DENIED.

## Background

In these consolidated cases, the plaintiffs insist that Daebo International Shipping Co., Ltd. has cheated the plaintiffs out of approximately $2 million and that its ownership scheme with Shinhan Capital Co., Ltd. should not shield Daebo from the Rule B attachment remedy.

For the purposes of the present motions, it is undisputed that

1

the plaintiffs have maritime claims against Daebo International Shipping Co., Ltd. and that Shinhan Capital Co., Ltd. is the DAEBO TRADER's registered owner. On February 14, 2015 Richardson Stevedoring & Logistics Services, Inc. became the first creditor of Daebo to file an action in this Court seeking attachment of the M/V DAEBO TRADER when it filed its verified complaint with request for issuance of Rule B attachment and garnishment.[1] The next day, SPV followed suit, filing its own verified complaint with request for issuance of Rule B attachment of the M/V DAEBO TRADER.[2] Two days

---

[1]Richardson Stevedoring & Logistics Services, Inc. alleges that Daebo International Shipping Co., Ltd. breached the parties' maritime contracts by failing to pay Richardson for any of its stevedoring and other services it rendered in connection with discharging six of Daebo's vessels (and providing Daebo and the vessel's master with Over, Short, and Damaged reports for cargo discharged from those vessels). Richardson alleges that Daebo has failed to pay invoices from Richardson for stevedoring and related standby and service charges totaling $1,632,285.25. Richardson includes allegations for breach of contract, promissory estoppel, quantum meruit, and alter ego/single business enterprise.

[2]SPV 1 LLC alleges that, as owner/operator of the KACEY, it entered into a government form charter party with Daebo International Shipping Co., Ltd. whereby SPV agreed to charter the KACEY to Daebo for 70 days (without guarantee), but that Daebo has breached the parties' charter party agreement by failing to make timely charter hire payments due and owing to SPV in exchange for Daebo's continued use of the vessel. As of February 18, 2015, SPV alleges that Daebo is indebted to SPV in the amount of $66,035.83 for charter hire earned and due but unpaid. SPV further alleges that Daebo also breached its obligations to tender cost for bunkers provided to the KACEY by A/S Dan Bunkering Ltd., which thereafter caused the arrest of the KACEY in the Port of Houston to enforce an alleged maritime lien. To obtain the vessel's release, SPV paid to Dan Bunkering the $120,762 in compensation for the bunkers provided to the KACEY. SPV alleges that Daebo breached its obligations under the parties' charter party by failing to pay for tug assistance to the KACEY by Bay-Houston Towing Co. To prevent

later, American Marine Services, Inc. filed its own verified complaint with request for issuance of Rule B attachment of the M/V DAEBO TRADER.[3] Based on the allegations of the verified complaints and, pursuant to Rules B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issued Rule B writs of foreign attachment, which were served on the DAEBO TRADER on or before February 18, 2015; according to the U.S. Marshals, the vessel was seized on Friday, February 20, 2015.

The plaintiffs allege that Daebo is the reported group owner, ship manager, and operator of the M/V DAEBO TRADER; that Daebo is the reported disponent owner of Shinhan; that Daebo and Shinhan act

---

threatened re-arrest of the KACEY in Houston by Bay-Houston, SPV paid to Bay Houston the sum of $8,844.42 for the tug services. SPV alleges that it is entitled to recover $19,098.30, which reflects the bunkers onboard that were valued at that amount less than at the time of the vessel's delivery to Daebo under the KACEY charter party. Finally, SPV alleges that it is entitled to assess a contractually stipulated fee of $4,500 for Daebo's failure to properly clean the vessel's hold. Accordingly, SPV alleges that Daebo is indebted to SPV in the amount of $219,240.55 for its breaches of the KACEY charter party. SPV asserts breach of contract, alter ego allegations, and Rule B allegations.

[3]AMS alleges that Daebo Shipping Co., Ltd. retained AMS to perform 113 maritime surveys for many of Daebo's vessels, that AMS invoiced Daebo for each survey (totaling $312,809.16), but that Daebo has not paid, which constitutes breach of their maritime contracts. AMS requested and was granted the issuance and service of a Writ of Foreign Attachment to effect a seizure of the M/V DAEBO TRADER pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. AMS alleges that the vessel's nominal owner is Shinhan Capital Co. Ltd. and the vessel's true beneficial owner is Daebo.

as a single business entity; that Shinhan is "nothing more than a bank or one-ship company vehicle set up by a bank;" that Shinhan is a "brass plate" company created on paper to legally own a ship and possibly limit the liability for Daebo, which is the 'real' and/or 'beneficial' owner;" that "Shinhan's registered ownership of the M/V DAEBO TRADER should be disregarded;" and that "Daebo ... is in reality the true and beneficial owner of the M/V DAEBO TRADER."

Dana Shipping and Trading, S.A., making a limited appearance solely as time charterer of the M/V DAEBO TRADER, with a full reservation of all rights and defenses pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, now moves the Court to vacate the attachment of the M/V DAEBO TRADER on the grounds that the plaintiffs cannot carry their burden of proving that defendant Shinhan Capital Co., Ltd. is an alter ego of defendant Daebo International Shipping Co., Ltd., making the attachment improper under Supplemental Rule B, and further asserting that the plaintiffs' improper attachment of the bunkers is interfering with Dana Shipping's charter of the M/V DAEBO TRADER. The plaintiffs oppose Dana's request to vacate the vessel's attachment; they argue that the writs of attachment should be sustained under Admiralty Rule E(4)(f) and that the plaintiffs should be afforded a full and fair opportunity to conduct discovery, argue the merits of their suits, and, if necessary, compel the sale of the DAEBO TRADER to

satisfy their claims against Daebo.

I.

The special remedies and procedures available to admiralty and maritime claimants are governed by the Supplemental Rules for Admiralty or Maritime Claims, as part of the Federal Rules of Civil Procedure. Supplemental Rule B(1)(a) provides:

> [A] verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for. . . .[4]

---

[4]Supplemental Rule B concerns the attachment and garnishment procedure available in the context of *in personam* actions:
> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required...are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property...in the hands of the garnishees named in the process.
> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that...the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment....

Fed.R.Civ.P. Supp.R. B. See also In re Murmansk Shipping Co., No. 00-2354, 2001 WL 699530, at *2 (E.D. La. June 18, 2001) ("In considering the propriety of an attachment, the court's inquiry is limited to an assessment of whether the underlying complaint alleges an *in personam* action grounded in maritime law and whether the attachment was necessary to effectuate jurisdiction.").

5

To support maritime attachment of property under this Rule, a plaintiff must satisfy filing, notice, and service requirements, and must also show that: (1) the plaintiff has a valid prima facie admiralty claim against the defendants; (2) the defendants cannot be found within the district; (3) the defendants' property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by* Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f). Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 51 (2d Cir. 2008), cert. denied, 555 U.S. 1102 (2009). The attachment must be vacated unless the attaching party presents sufficient evidence to show probable cause for the attachment. Austral Asia Pte Ltd. v. SE Shipping Lines Pte Ltd., No. 12-1600, 2012 WL 2567149 (E.D. La. July 2, 2012)(Engelhardt, J.) (citations omitted). However, courts are not obliged to make binding determinations of fact during Rule E(4)(f) hearings; rather, courts are called upon to "'merely hold[] that it is [or is not] likely' that alleged facts are true." Id. at *2 (noting that post-attachment hearings are "not intended to definitively resolve the dispute between the parties; instead, the district court makes a preliminary determination of whether

6

reasonable grounds exist for the arrest").

## II.

### A.

As a threshold matter, the plaintiffs challenge Dana Shipping's -- the time charterer's -- standing to seek vacatur of the attachment of the DAEBO TRADER.

The plaintiffs submit that non-party Dana Shipping is the mere time-charterer of the vessel; that Dana Shipping does not have title to the vessel; that it does not pay the vessel crew or the vessel mortgage; that it is not liable to pay any maritime liens incurred by the vessel. The plaintiffs argue that if the Court were to allow Dana to step into the shoes of the vessel owner, who is required by Rule B to appear, it would make a mockery of the vessel attachment process. Dana Shipping counters that it has "an interest in this matter" and is entitled to a prompt post-attachment hearing and an order vacating plaintiffs' wrongful attachment of the vessel. Dana contends that the plaintiffs' wrongful attachment of the ship interferes with Dana's time charter and Dana's contractual obligations to deliver cargo of 57,000 metric tons of soybeans to China.

To resolve this threshold dispute, the Court turns to the text of the relevant rule. Once a vessel has been attached pursuant to Rule B, Rule E(4)(f) calls for a prompt, post-attachment hearing and places the burden on the plaintiff to show why the attachment

should not be vacated:

> Whenever property is arrested or attached, **any person claiming an interest in it** shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

(emphasis added).

Dana Shipping has alleged an interest in the property attached. The plaintiffs disagree, and ask the Court to read in "ownership" as modifying "interest" where Congress did not include this limitation. Although the Court is not unsympathetic to the plaintiffs' policy arguments in support of their reading of the rule, the Court finds that the text of the rule is clear and unambiguous. Indeed, the Court notes that, throughout the Supplemental Rules and the Advisory Committee Notes, Congress specifies "ownership interest" or uses the modifier "shipowner" in other rules and commentary. But, for whatever reason, it did not do so in Rule E(4)(f). Notably, neither side points to any binding authority in support of its position. The text speaks for itself.

*B.*

In favor of vacatur of the attachment of the vessel, Dana Shipping contends that the plaintiffs have failed to submit evidence in support of a finding of alter ego.[5] The plaintiffs

---

[5] Dana Shipping insists, however, that the plaintiffs have failed to show that they can succeed on their alter ego allegations. The alter ego doctrine applies only if "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit fraud

counter that they have submitted sufficient allegations and evidence to satisfy their burden under Admiralty Rule E(4)(f), and that they should be afforded an opportunity to conduct discovery, argue the merits of their lawsuits, and, if necessary, compel the sale of the DAEBO TRADER to satisfy their claims against Daebo.

For the purposes of the motions to vacate, it is undisputed that the plaintiffs have maritime claims against Daebo and that Shinhan is the DAEBO TRADER's registered owner. Plaintiffs do not assert any claims against Shinhan, but allege that Shinhan is Daebo's alter ego; that Shinhan's registered ownership should be disregarded as a sham; that Daebo is the true, legal, and beneficial owner of the vessel; and that Shinhan is "nothing more than a bank" responsible for financing but lacking true indicia of ownership. Have the plaintiffs carried their burden of putting forth sufficient evidence to demonstrate that the attachment of the M/V DAEBO TRADER is supported by probable cause?

In support of their allegations, the plaintiffs submit that:

- Daebo has publicly stated that it purchased the DAEBO TRADER and, at that time, Daebo "purchased" it, became the "Debtor" and Shinhan's parent bank became the "Mortgagee" with regard to the first $31.5 million in secured financing of the vessel;
- Daebo advertises the vessel to third parties as its own on

---

or wrong that injured the party seeking to pierce the veil." Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 359 (5th Cir. 2003). Dana Shipping contends that the plaintiffs have failed to offer evidence of any of the 15 factors considered by courts in deciding whether to pierce a vessel owner's corporate veil. The plaintiffs appear to admit that they cannot, without discovery, prove that this doctrine applies here.

9

- Daebo's website, with no reference to Shinhan;
- Daebo clearly had naming rights to the DAEBO TRADER;
- Dana Shipping entered into a charter party that identifies Daebo as M/V DAEBO TRADER's owner, which indicates that Daebo does in fact exercise dominion and control over the vessel and hold itself out to charterers as the vessel's true owner;
- Daebo President's public remarks regarding Daebo's purchase of the vessel tend to suggest that Daebo, not Shinhan, selected the DAEBO TRADER for purchase rather than some other vessel;
- the submissions confirm that Shinhan, which is part of the Shinhan Financial Group (one of the largest banks in South Korea), is a financing company, not a company traditionally focused on maritime commerce, trade, or shipping and, thus, not a vessel owner;[6]
- Nowhere in its Annual Report does Shinhan mention that it is the registered owner of 40+ oceangoing vessels such as the DAEBO TRADER;
- DAEBO TRADER's Protection & Indemnity coverage is provided by The Steamship Mutual Underwriting Association (Bermuda) in favor of Daebo, not Shinhan; Daebo is listed as "Member" (meaning insured).

In addition, the plaintiffs submit that other evidence supports their probable cause burden and that Daebo acquired and retained actual ownership and control of the vessel through its financed purchase: (a) Shinhan Bank lent and Daebo borrowed $31.5 million on the date the vessel was purchased, and that this loan was secured by a mortgage in favor of Shinhan Bank and against Daebo; (b) if Shinhan were the true owner of the vessel, then the primary mortgage on the vessel would be legally improper; (c) in its audited financial report, Korea South-East Power Co., Ltd., lists as a "long term marine transportation commitment" an agreement with

---

[6]The plaintiffs submit that there are reasonable grounds to believe that Shinhan may have financed Daebo's purchase of the M/V DAEBO TRADER and is holding title to the vessel in its name until the note is paid off. If Shinhan is the mortgagee, it would not simultaneously be considered the vessel's owner.

Daebo for carriage of cargoes of bituminous coal on the M/V DAEBO TRADER spanning from November 2008 through October 2023; (d) Daebo holds itself out as the owner of the DAEBO TRADER.[7]

The plaintiffs submit that, in light of the preliminary nature of these proceedings, they have offered more than sufficient allegations and evidence that Daebo is the true, legal, and beneficial owner of the DAEBO TRADER.  Mindful that a Rule E(4)(f) hearing is not intended to resolve disputes on the merits, the Court finds that on this record the plaintiffs have submitted sufficient allegations and evidence concerning their position that the M/V DAEBO TRADER is Daebo's property, not Shinhan's; at this stage of the proceedings, the Court is satisfied that the attachment of the DAEBO TRADER is supported by probable cause.  Of course, once Daebo or Shinhan appear, the parties will target their discovery efforts on this pivotal issue: the extent of Daebo's attachable interest in the DAEBO TRADER.[8]

Accordingly, Dana Shipping's motions to vacate the vessel's

---

[7] The plaintiffs also submit that the silence on the part of Daebo and Shinhan "speaks volumes."  But the Court rejects this argument.

[8] Finally, even if Daebo is the ship's owner, Dana Shipping argues in the alternative that Daebo's recently filed reorganization proceeding in South Korea will make the attachment futile.  This argument is speculative and premature as it depends on whether and when Daebo's foreign reorganization proceeding is recognized in the United States.

attachment are DENIED.

New Orleans, Louisiana, March 2, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE