UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC.<br><br>VERSUS<br><br>DAEBO INTERNATIONAL SHIPPING CO., LTD. AND SHINHAN CAPITAL CO., LTD. | * CIVIL ACTION<br>*<br>* NO.  15-490<br>*  c/w  15-494,<br>*       15-496<br>*<br>* PERTAINS TO 15-494<br>*<br>* SECTION " F "<br>*<br>* MAGISTRATE ( 5 )<br>* |

FIRST AMENDED VERIFIED COMPLAINT

Plaintiff, SPV 1 LLC, ("SPV" or "Plaintiff"), appearing through undersigned counsel and for its First Amended Verified Complaint against Daebo International Shipping Co., Ltd. ("Daebo") and Shinhan Capital Co., Ltd ("Shinhan"; collectively, "Defendants") pursuant to Rule 15(a) and Rule 15(c)(1)(b) of the Federal Rules of Civil Procedure alleges, upon information and belief, as follows:

1.

This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  Jurisdiction is proper under 28 U.S.C. § 1333, as hereinafter more fully set forth.  This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for a foreign arbitration proceeding.  Venue is proper in this Court because Defendant Shinhan has property located within this district, *to wit*, the M/V DAEBO TRADER.

2.

At all material times to this action, SPV, was and still is a corporation or other business entity organized and existing under the laws of a foreign country, and was and is the registered owner of the M/V KACEY (the "KACEY").

3.

At all material times to this action, Shinhan was and is a corporation or other business entity organized and existing under the laws of a foreign country.

4.

At all material times to this action, Daebo was and is a corporate or other business entity organized and existing under the laws of a foreign country.

5.

On or about October 15, 2014, SPV, as owner/operator of the KACEY, entered into a Government Form charter party with Daebo whereby SPV agreed to charter the KACEY to Daebo for a period of about 70 days (without guarantee).  As is customary, the charter agreement was memorialized in (1) a fixture recap, (2) a *pro forma* charter party, and (3) rider clauses, which together constitute and are hereinafter collectively referred to as the "KACEY Charter Party."  *See* M/V KACEY Fixture Recap, attached as Exhibit A (the "Fixture Recap"); Pro Forma Government Form Charter Party, attached as Exhibit B ("Government Form Charter Party"); M/V KACEY Rider Clauses, attached as Exhibit C ("Rider Clauses").

6.

Pursuant to the KACEY Charter Party, Daebo was obligated to pay SPV $3,750 USD per day or portion pro rata thereof in exchange for the use of the KACEY through the first sixty-five (65) days of the charter, and thereafter was obligated to pay SPV $9,750 USD per day or portion

pro rata thereof for all additional days until termination of the charter. *See* Fixture Recap, ¶ 2 (DURATION).

7.

In addition to charter hire as specified above, the KACEY Charter Party obligated Daebo to "provide and pay for all fuel except as otherwise agreed, Port Charges, necessary, compulsory Pilotages, Agencies, Commissions, towages, boatages, stevedoring, tallying, canal dues, river tolls, Consular Charges… and all other usual expenses…." *See* Government Form Charter Party, Cl. 2.

8.

Clause 18 of the applicable Government Form Charter Party provides that "Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel." *See* Government Form Charter Party, Cl. 18.  In addition, Clause 48 of the Rider Clauses provides that "[i]n no event shall Charterers procure, or permit to be procured, for the vessel, any supplies, necessaries or services without previously obtaining a statement signed by an authorized representative of the furnisher thereof, acknowledging that such supplies, necessaries or services are being furnished on the credit of Charterers and not on the credit of the vessel or of her Owners, and that the furnisher claims no maritime lien on the vessel therefore." Rider Clauses, Cl. 48.

**Daebo's Breach of the KACEY Charter Party**

9.

In breach of its obligations under the KACEY Charter Party, from on or about October 16, 2014, through on or about February 25, 2015, Daebo failed to make charter hire payments

due and owing to SPV in exchange for Daebo's continued use of the vessel. As a result, Daebo became, and remains, indebted to SPV in the amount of $127,702.03 for charter hire earned and due but unpaid.

10.

Further pursuant to the KACEY Charter Party, Daebo was required to ensure that upon redelivery of the vessel she had onboard the same quality and quantity of bunkers as at the commencement of the charter. Daebo breached this obligation; upon redelivery of the KACEY, the quantity and quality of bunkers onboard reflected a discrepancy of $17,739.90, *i.e.*, the bunkers onboard were valued at $17,379.90 less than at the time of the vessel's delivery to Daebo under the KACEY Charter Party. Under the KACEY Charter Party, SPV is entitled to recover the value of these bunkers from Daebo.

11.

In addition to the foregoing, upon redelivery of the KACEY Daebo breached its obligation under the KACEY Charter Party to ensure that the the vessel's holds were properly cleaned. Accordingly, SPV is entitled to assess a contractually stipulated fee of $4,500 ILOHC ("in lieu of hold cleaning").

12.

In sum, SPV's damages directly attributable to Daebo's failure to pay hire and related expenses due to SPV under the KACEY Charter Party total $149,941.93.

**SPV's Satisfaction of Daebo's Debts to Third Parties**

13.

On information and belief, on or about February 3, 2015, pursuant to an order received from Daebo, A/S Dan Bunkering Ltd. ("Dan Bunkering") provided bunkers to the KACEY in the

Port of Houston. Under the terms of the KACEY Charter Party, Daebo was responsible for the cost of such bunkers, was prohibited from permitting Dan Bunkering to incur a lien against the KACEY for such bunkers, and was obligated to obtain a statement from Dan Bunkering disavowing such lien prior to delivery of the bunkers to the vessel. On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the bunkers provided by Dan Bunkering.

14.

On or about February 12, 2015, Dan Bunkering caused the arrest of the KACEY in the Port of Houston to enforce an alleged maritime lien against the vessel resulting from Daebo's acts and omissions as described above. In order to obtain the vessel's release so that she could continue her engagement in maritime commerce, SPV paid to Dan Bunkering the sum of $120,762.00 in compensation for the bunkers provided to the KACEY. *See* Dan Bunkering Invoice, attached as Exhibit D. As a result of its payment of Daebo's debt to Dan Bunkering, SPV became subrogated to Dan Bunkering's rights against Daebo in regard to the services provided on Daebo's order. Alternatively, as Daebo was obligated to pay Dan Bunkering under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Dan Bunkering constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

15.

On or about January 31 and February 13, 2015, again pursuant to orders from Daebo, Bay-Houston Towing Co. ("Bay Houston") was instructed to provide tug assistance to the KACEY during the vessel's port call in Houston. *See* Bay Houston Invoice, attached as Exhibit E. Under the terms of the KACEY Charter Party, Daebo was responsible for the cost of such

tugs, was prohibited from permitting Bay Houston to incur a lien against the KACEY for such tugs, and was obligated to obtain a statement from Bay Houston disavowing such lien prior to the tug assistance being requested. On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the tug services requested from and provided by Bay Houston.

16.

On or about February 13, 2015, following the release of the KACEY from her arrest by Dan Bunkering as described above, Bay Houston threatened to arrest the KACEY in the Port of Houston to enforce the alleged maritime lien against the vessel resulting from Daebo's acts and omissions as described above. In order to prevent the re-arrest of the vessel and to allow the KACEY to sail from Houston to its next port of call, SPV paid to Bay Houston the sum of $8,844.42 for the tug services. As a result of its payment of Daebo's debt to Bay Houston, SPV became subrogated to Bay Houston's rights against Daebo in regard to the services provided on Daebo's order. Alternatively, as Daebo was obligated to pay Bay Houston under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Bay Houston constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

17.

While the KACEY was in the Port of Houston, Daebo also engaged Richardson Stevedoring & Logistics Services, Inc. ("Richardson"), to provide stevedoring services for the unloading of cargo from the vessel. Under the terms of the KACEY Charter Party, Daebo was responsible for the cost of such services, was prohibited from permitting Richardson to incur a lien against the KACEY for such services, and was obligated to obtain a statement from

Richardson disavowing such lien prior to the stevedoring services being requested. On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the services requested from and provided by Richardson. The value of Richardson's services, and the amount of its lien against the KACEY, was $272,725.17. *See* Richardson Invoice, attached as Exhibit H.

18.

On or about February 17, 2015, following the KACEY's release from arrest and departure from Houston, Richardson threatened to arrest the vessel during her next port call in Mobile, Alabama, to foreclose on its maritime lien for the above-mentioned services provided at Daebo's instruction. In order to prevent the re-arrest of the vessel, SPV paid to Richardson the sum of $220,00.00 in exchange for an assignment of the full value of Richardson's claim against Daebo. As a result of its payment of Daebo's debt, SPV became subrogated to Richardson's rights against Daebo in regard to the services provided on Daebo's order. Alternatively, as Daebo was obligated to pay this amount under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Bay Houston constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

19.

Following her departure from Houston, while still operating pursuant to the KACEY Charter Party and according to orders by Daebo, the KACEY sailed to the Port of Mobile, Alabama.

20.

Prior to the vessel's arrival in Mobile, Daebo retained Wilhelmsen Ships Service ("Wilhelmsen") to serve as local agents for the vessel during her port call in Mobile. Under the

terms of the KACEY Charter Party, Daebo was responsible for the cost of such services, was prohibited from permitting Wilhelmsen to incur a lien against the KACEY for such services, and was obligated to obtain a statement from Wilhelmsen disavowing such lien prior to the stevedoring services being requested. On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the services requested from and provided by Wilhelmsen. The value of Wilhelmsen's services, and the amount of its lien against the KACEY, was $78,779.69. *See* Wilhelmsen Invoice, attached as Exhibit I.

21.

On or about February 18 and February 24, 2014, in order to avoid the arrest of the KACEY in Mobile by Wilhelmsen and to ensure the timely delivery of cargo bound for Mobile (failure of which would have given rise to additional claims against the KACEY), SPV paid Wilhelmsen $78,779.69 for its services provided to the KACEY in Mobile. As a result of its payment of Daebo's debt to Wilhelmsen, SPV became subrogated to Wilhelmsen for its rights against Daebo in relation to the aforementioned services provided on Daebo's order. Alternatively, as Daebo was obligated to pay this amount under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Wilhelmsen constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

22.

On the basis of the foregoing, Daebo is indebted to SPV in the total present amount of $578,328.04, including for unpaid charter hire and expenses owed to SPV directly under the KACEY Charter Party and for debts owed by Daebo but paid by SPV, which are recoverable

either by way of subrogation and/or assignment or as additional damage arising from Daebo's breach of the KACEY Charter Party.

## ALTER EGO ALLEGATIONS

23.

SPV, by this reference, incorporates all foregoing allegations as Alter Ego Allegations as if repeated herein *in extenso.*

24.

Upon information and belief, Shinhan is merely an alter ego of Daebo and/or colluded with Daebo to perpetrate a fraud on creditors whereby Shinhan became the "registered owner" of the DAEBO TRADER.[1]  This fraud was carried out through a sham "sale-leaseback" transaction in which Daebo fraudulently transferred title to the vessel to Shinhan, while in fact retaining all indicia of ownership in itself.  Daebo is the reported group owner, ship manager, and operator of the DAEBO TRADER (IMO No. 9230153), and the reported disponent owner of Shinhan.[2] Despite the fact that title to the vessel is in the name of Shinhan, Daebo retains control and beneficial use of the DAEBO TRADER, for the purpose of placing the DAEBO TRADER beyond the reach of Daebo's creditors.  Shinhan is the alter-ego and fraudulent transferee of Daebo and therefore the corporate veil of Shinhan should be equitably pierced and the vessel, nominally and fraudulently registered in the name of Shinhan should be attached to satisfy the debts of Daebo.  As such, there is a sufficient *quasi in rem claim* against Shinhan and the vessel

---

[1] *See* Exhibit F, verifying that on January 5, 2010, Daebo Shipping Co., Ltd. merged with Daebo International Shipping Co., Ltd.  As of that date, Daebo Shipping Co., Ltd., was no longer in existence and transferred all of its assets, liabilities, and rights and duties to Daebo International Shipping Co., Ltd.  Daebo International Shipping Co., Ltd therefore is the successor or group owner of the DAEBO TRADER.

[2] *See* Lloyd's Register – Fairplay Fleet List Report by Group Owner for Daebo Shipping Co. Ltd., attached as Exhibit G.

to permit attachment thereof under Admiralty Rule B notwithstanding the alleged transfer of the vessel to Shinhan,

25.

Further, upon information and belief, Shinhan and Daebo act as a single business entity with regards to their relationship to the DAEBO TRADER, with such unity of ownership and interest that no separation exists between them.

26.

Further, Shinhan's registered ownership of the DAEBO TRADER should be disregarded. Upon information and belief, Shinhan is a wholly-owned subsidiary of a bank or one-ship company vehicle set up by a bank. Accordingly, Shinhan is a "brass-plate" company employed on paper to legally own a ship and to limit liability for Daebo, which remains the "real" and/or "beneficial" owner of the vessel notwithstanding the fraudulent transaction described herein.

27.

In conclusion, Daebo controls the vessel and colluded with Shinhan (the registered owner of the DAEBO TRADER via a fraudulent transfer) and as such SPV's claim should be enforced against Shinhan because title to the vessel was granted to Shinhan, a mere financier, where Daebo was still obligated to make mortgage payments. The titling of the vessel in Shinhan's name was a fraudulent transfer and particularly a fraudulent transfer as to SPV. Because Shinhan has received title to Daebo's assets without appropriate consideration it is an alter ego and fraudulent transferee with respect to Daebo and should be held liable for Daebo's debts.

## RULE B ALLEGATIONS

28.

SPV, by this reference, incorporates all foregoing allegations as Rule B Allegations as if repeated herein *in extenso.*

29.

Daebo's failure to pay the charter hire due under the KACEY Charter Party, as well as its failure to pay expenses of the vessel as set forth above, gives rise to an *in personam* claim for breach of contract in favor of SPV and against Daebo in the principal amount of $578,328.04 (FIVE HUNDRED SEVENTY-EIGHT THOUSAND THREE HUNDRED TWENTY-EIGHT AND 04/100).

30.

Daebo and Shinhan, on information and belief, cannot be found within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, as alleged, have goods and chattels within this District subject to seizure, arrest and attachment, namely the DAEBO TRADER, her engines, tackle, apparel, furniture, etc. Further, because Daebo and Shinhan are not found within the district as contemplated under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, SPV is entitled to a Writ of Attachment pursuant to Rule B, executable against Daebo and Shinhan and all of its/their property within the district, including the DAEBO TRADER, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

WHEREFORE, Plaintiff, SPV, prays that:

1. This Verified Original Complaint be deemed good and sufficient;

2. Process in due form of law according to the practice of this Honorable Court issue against Daebo and Shinhan, citing them to appear and answer this First Amended Verified Complaint;

3. After due proceedings are had, there be judgment in favor of SPV and against Daebo and Shinhan in the full amount of SPV's claims, together with interest, costs, and attorney's fees, as set forth above;

4. Process according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue to attach and seize in the amount sued for Daebo's and/or Shinhan's goods, chattels, credits, monies, and effects of any kind; and

5. SPV be granted all further relief as justice and equity may permit.

Respectfully submitted,

CHAFFE McCALL, L.L.P.

     /s/ Alan R. Davis
Ivan M. Rodriguez, #22574
Alan R. Davis, #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

and

Dimitri P. Georgantas
Texas Bar No. 07805100
Federal I.D. No. 2805
801 Travis Street, Suite 1910
Houston, Texas 77002
(713) 546-9800 (Telephone)
(713) 546-9806 (Facsimile)
**Attorneys for SPV 1, LLC**

## Certificate of Service

      I hereby certify that on this 6th day of March, 2015, a copy of the foregoing was served on all counsel of record by ECF filing.

                                                */s/ Alan R. Davis*
                                                Alan R. Davis