# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC.<br><br>        Plaintiff<br><br>VERSUS<br><br>DAEBO INTERNATIONAL SHIPPING CO., LTD. and SHINHAN CAPITAL CO., LTD.<br>        Defendant | CIVIL ACTION<br><br>NO. 15-0490 "F" (5)<br>c/w 15-0494 and 15-0496<br><br>JUDGE FELDMAN<br><br>MAGISTRATE NORTH |

## PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

TO THE HONORABLE DISTRICT JUDGE:

    Plaintiff, RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC., files its First Amended Verified Complaint against Defendants, DAEBO INTERNATIONAL SHIPPING CO., LTD., F/K/A DAEBO SHIPPING CO., LTD. ["DAEBO"] *in personam* and SHINHAN CAPITAL CO. LTD. ["Shinhan"], *in personam,* pursuant to Rule 15(a) and Rule 15(c)(1)(b) of the Federal Rules of Civil Procedure, and represents upon information and belief as follows:

1.

    Plaintiff's claims against Defendants *in personam*, and property owned by Defendants within this District *quasi in rem*, present an admiralty or maritime case within the jurisdiction of the United States and this Honorable Court pursuant to Article III, section 2 of the U.S. Constitution, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure, and are

brought pursuant to General Maritime Law, and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.

Venue is proper because Defendants DAEBO INTERNATIONAL SHIPPING CO., LTD. and SHINHAN CAPITAL CO. LTD. cannot be found within this District, and Defendant's property, the *M/V DAEBO TRADER*, is currently within this District and subject to this Court's jurisdiction.

3.

At all times material hereto, Plaintiff RICHARDSON STEVEDORING & LOGISTICS SERVICES, INC. ["RICHARDSON"], was and is a Texas corporation with its principal place of business in Houston, Texas, and is in the business of providing stevedoring, terminal storage, and other marine cargo handling services in the Ports of Houston, Texas, and Mobile, Alabama to companies engaged as ocean carriers that own, operate, manage, and/or charter vessels.

4.

Upon information and belief, and at all material times hereto, Defendant DAEBO (IMO 0658566) was and is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of owning, operating, managing, and/or chartering vessels as an ocean carrier.

5.

Upon information and belief, and at all material times hereto, Defendant SHINHAN (IMO 1841241) was and is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of providing credit-specialized financial services, commercial financing, corporate restructuring, and project financing services.

6.

DAEBO[1] is the reported group owner, ship manager, and operator of the *M/V DAEBO TRADER* (IMO 9230153, Call Sign DSPS8), which is currently within this District. DAEBO is also the reported disponent owner of the *M/V DAEBO TRADER*'s registered owner, SHINHAN (IMO 1841241).[2] DAEBO is therefore subject to this Court's *quasi-in rem* jurisdiction for purposes of maritime attachment.

7.

From October 2014 to February 2015, DAEBO engaged RICHARDSON to discharge inbound cargos of steel products from six (6) DAEBO owned, operated, or chartered vessels in accordance with previously established stevedoring and terminal freight handling rates that DAEBO agreed to through nomination of RICHARDSON as its stevedore.[3]

8.

Specifically, pursuant to DAEBO'S nominations, RICHARDSON fully performed discharge of the *M/V HAWK*, *M/V CMB BIWA*, *M/V UBC LONGKU*, *M/V SHOU CHEN SHAN*, *M/V GLORIANA,* and the *M/V TAI HAPPINESS*. Upon completion of each ship, RICHARDSON provided DAEBO and the vessel's master with an OS&D[4] report detailing what cargos listed in the shipping documents were received, over-shipped, short-shipped, or received in an unsatisfactory or damaged condition. In each instance, the respective master acknowledged receipt of the OS&D by signing same.

---

[1] (Doc. Entry # 001-9).
[2] (Doc. Entry # 001-2).
[3] (Doc. Entry # 001-3).
[4] (Doc. Entry # 001-4, 001-5).

9.

DAEBO'S agreement with RICHARDSON for stevedoring and other services related to discharging its vessels is a maritime contract.

10.

To date, DAEBO has not paid RICHARDSON for any of its services rendered in connection with discharging the six (6) referenced vessels, despite numerous written requests from RICHARDSON to DAEBO for payment. Specifically, DAEBO has failed to pay invoices from RICHARDSON for stevedoring and related standby and service charges in the following amounts:

| Vessel Name | Date Completed | Amount Due |
|---|---|---|
| *M/V HAWK* | 10/20/2014 | $298,229.30 |
| *M/V CMB BIWA* | 11/15/2014 | $297,660.80 |
| *M/V UBC LONGKU* | 12/11/2014 | $204,320.69 |
| *M/V SHOU CHEN SHAN* | 12/22/2014 | $263,279.66 |
| *M/V GLORIANA* | 12/22/2014 | $303,853.94 |
| *M/V TAI HAPPINESS* | 1/16/2014 | $264,940.86 |
| | **TOTAL** | **$1,632,285.25**[5] |

11.

On December 5, 2014, DAEBO's representative promised to pay RICHARDSON's initial invoice for discharging the *M/V HAWK* on December 19, 2014. RICHARDSON did not receive said payment from DAEBO as promised. DAEBO next promised to pay Richardson's invoices for the *M/V HAWK* and *M/V CMB BIWA* on February 11, 2015 and February 23, 2015, respectively. RICHARDSON, however, did not receive payment from DAEBO for the *M/V HAWK* invoice on February 11, 2015.[6]

---

[5] (Doc. Entry # 001-6).

[6] (Doc. Entry #001-7).

# CAUSES OF ACTION

## *Breach of Maritime Contract*

12.

Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

13.

Plaintiff and Defendants had a valid, enforceable contract to furnish necessary cargo discharge services to the vessels within the Port of Houston, Texas.

14.

This engagement was memorialized in written nomination agreements and invoices, which called for Plaintiff to serve as stevedore and perform the cargo discharge services of Defendants' vessels calling to the Port of Houston, Texas.

15.

Upon completing the contracted-for services, Plaintiff sent Defendants invoices for payment of said services totaling $1,632,285.25.

16.

Defendants materially breached the contracts by failing to make payment in the amount of $1,632,285.25 to Plaintiff when same became due and owing.

17.

All conditions precedent to Plaintiff's performance have been performed, were excused, were waived, or otherwise satisfied.

18.

As a consequence of Defendants' breach, Plaintiff has suffered actual and foreseeable damages, including but not limited to value of the contracts having been fully performed. The

contracts in this case were maritime in nature as same involved stevedoring services and cargo discharge operations rendered to Defendants' vessels.

## *Promissory Estoppel*

19.

Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

20.

Defendants made promises to pay Plaintiff $1,632,285.25 for the stevedoring and cargo discharge operations. Plaintiff reasonably and substantially relied on Defendants' promises by performing the discharge operations for Defendants' vessels in the Port of Houston, Texas. Plaintiff's reliance on Defendants' promises has been to its detriment because Defendants have refused to pay Plaintiff the total contracted for invoice amount of $1,632,285.25 upon timely completion of the cargo discharge operations of Defendants' vessels. Plaintiff's reliance on Defendants' promises was reasonably foreseeable by Defendant and injustice can be avoided only be enforcing Defendant's promises to pay for Plaintiff's services. Accordingly, Plaintiff is entitled to recover in the amount of $1,632,285.25 under a theory of promissory estoppel.

## *Quantum Meruit*

21.

Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

22.

Defendants accepted the stevedoring and cargo discharge services performed and completed by Plaintiff. Defendant had reasonable notice that Plaintiff expected compensation for these services, but Defendants have not compensated Plaintiff for the stevedoring and cargo discharge services performed on Defendants' vessels.

23.

Accordingly, Plaintiff is entitled to recover from Defendants payment for services rendered through the date of termination. Said outstanding charges total in the amount of $1,632,285.25, which sum is fair and reasonable for the necessary work and services supplied to Defendants' vessels.

*Alter Ego / Single Business Enterprise Allegations*

24.

Plaintiff, incorporates by reference all foregoing allegations as Alter Ego/Single Business Enterprise Allegations as if repeated herein *in extenso*.

25.

Upon information and belief, SHINHAN, as registered owner of the *M/V DAEBO TRADER,* is merely an alter ego of DAEBO and/or colluded with DAEBO to perpetrate a fraud on creditors whereby SHINHAN became the "registered owner" of the vessel. This fraud was carried out through a sham "sale-leaseback" transaction in which DAEBO fraudulently transferred title to the vessel to SHINHAN, while in fact retaining all indicia of ownership in itself. DAEBO is the reported group owner,[7] ship manager, and operator of the *M/V DAEBO TRADER* (IMO No. 92130153), and the reported disponent owner is SHINHAN. Despite the fact that title to the vessel is in the name of SHINHAn, DAEBO retains control and beneficial use of the *M/V DAEBO TRADER*, for the purpose of placing the vessel beyond the reach of DAEBO's creditors. SHINHAN is the alter-ego and fraudulent transferee of DAEBO and therefore the corporate veil of SHINHAN should be equitably pierced and the vessel, nominally and fraudulent registered in the name of SHINHAN should be attached to satisfy the debts of DAEBO. Accordingly, there is a sufficient

---

[7] (Doc. Entry # 001- 8).

*quasi in rem* claim against SHINHAN and the vessel to permit attachment thereof under Admiralty Rule B notwithstanding the alleged transfer of the vessel to SHINHAN.

26.

Further, upon information and belief, SHINHAN and DAEBO act as a single business entity, with such unity of ownership and interest that no separation exists between them. Specifically, it is believed that SHINHAN has directors and subscribers that have been nominated by DAEBO for purposes of ownership confidentiality and anonymity.

27.

Further, SHINHAN'S registered ownership of the *M/V DAEBO TRADER* should be disregarded. Upon information and belief, SHINHAN is a wholly-owned subsidiary of a bank or one-ship company vehicle set up by a bank. Accordingly, SHINHAN is a "brass-plate" company created on paper to legally own a ship and possibly to limit liability for DAEBO, which is the "real" and/or "beneficial" owner of the *M/V DAEBO TRADER* notwithstanding the fraudulent transaction described herein.

28.

Thus, DAEBO controls the vessel and colluded with SHINHAN (the registered owner of the *M/V DAEBO TRADER* via a fraudulent transfer) and Plaintiff's claims should be enforced against SHINHAN because title to the vessel was granted to SHINHAN, a mere financier, where DAEBO was still obligated to make mortgage payments. The titling of the vessel in SHINHAN's name was a fraudulent transfer and particularly a fraudulent transfer as to Plaintiff. Because SHINHAN has received title to DAEBO's assets without appropriate consideration it is an alter ego and fraudulent transferee with respect to DAEBO and should be held liable for DAEBO's debts.

## RULE B ALLEGATIONS

29.

Plaintiff incorporates by reference all foregoing Rule B Allegations as if repeated herein *in extenso*.

30.

DAEBO's failure to pay Plaintiff the contracted-for services for the discharging of six (6) DAEBO owned, operated, or chartered vessels in the Port of Houston, Texas, gives rise to an *in personam* claim for maritime breach of contract in favor of Plaintiff in the principal amount of $1,632,285.25USD.

31.

Plaintiff is informed and believes that none of the officers of Defendants DAEBO and SHINHAN are now within the Eastern District of Louisiana, that neither DAEBO nor SHINHAN maintain an office within this District, that neither DAEBO nor SHINHAN are incorporated or registered to do business in the State of Louisiana, that neither DAEBO nor SHINHAN have an agent for the receipt of service of process in Louisiana, and that neither DAEBO nor SHINHAN can be found within this District for purposes of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

32.

Plaintiff is informed and believes that Defendants DAEBO and SHINHAN now have certain goods and chattels, or credits and effects within this District, namely the *M/V DAEBO TRADER*, her engines, tackle, apparel, furniture, etc. Further, because DAEBO and SHINHAN are not found with this district as contemplated under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, Plaintiff is entitled to a Writ of Attachment pursuant to Rule B, executable

against DAEBO and SHINHAN and all of its/their property within this District, including the *M/V DAEBO TRADER*, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

33.

Plaintiff requests that this Honorable Court issue a Writ of Attachment and Garnishment for the *M/V DAEBO TRADER* to enforce the Rule B claims asserted herein, and that if Defendants fail to post security, that after due proceedings are had, that the property be sold to satisfy Plaintiff's claims. Plaintiff agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of seizing the aforesaid property.

**WHEREFORE**, Plaintiff prays:

a. That process of maritime attachment and garnishment issue to attach and seize Defendants DAEBO and SHINHAN's goods, chattels, credits and effects, including, but not limited to the *M/V DAEBO TRADER*;

b. That process in due form of law according to the practice of this Honorable Court issue against DAEBO and SHINHAN, citing them to appear and answer this First Amended Verified Complaint;

c. That a judgment may be entered against Defendants DAEBO and SHINHAN awarding Plaintiff actual damages, attorney's fees pursuant to law, pre- and post-judgment interest, and court costs in amounts to be determined, and that a decree of condemnation issue against the property of Defendants; and

d. That Plaintiff may have such other and further relief as the Court and justice may deem just and appropriate under the circumstances of the cause.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: *s/ Michael M. Butterworth*
Michael M. Butterworth (#21265)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
michael.butterworth@phelps.com

**OF COUNSEL:**
Douglas T. Gilman
Texas Bar No. 24048496; Federal I.D. No. 19897
Brenton J. Allison
Texas Bar No. 24040417; Federal I.D. No. 36863
Francis I. Spagnoletti
Texas Bar No. 18869600; Federal I.D. No. 5369
GILMAN ✳ALLISON LLP

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of March, 2015, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

*s/ Michael M. Butterworth*
MICHAEL M. BUTTERWORTH