```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


RICHARDSON STEVEDORING                              CIVIL ACTION
& LOGISTICS SERVICES, INC.

v.                                                  NO. 15-490
                                                    c/w 15-494
                                                        15-496
                                                        15-758
                                                        15-814

DAEBO INTERNATIONAL SHIPPING CO. LTD., ET AL.       SECTION "F"
```

## ORDER AND REASONS

Before the Court is Shinhan Capital Co. Ltd.'s motion to vacate maritime attachment of the M/V DAEBO TRADER. For the reasons that follow, the motion is DENIED.

## Background

This maritime case features multiple vessel attachments arising out of competing claims by various creditors against Daebo International Shipping Co., Ltd. More particularly, in these consolidated cases the plaintiffs insist that Daebo International Shipping Co., Ltd. owes them millions of dollars for services rendered to Daebo and that its fraudulent ownership scheme with Shinhan Capital Co., Ltd. should not shield Daebo from the Rule B attachment remedy. For its part, Shinhan Capital Co. Ltd. urges

1

the Court to vacate the attachments of its vessel, the M/V DAEBO TRADER, which is loaded with 57,000 metric tons of perishable soybean cargo valued at approximately $25 million and, Shinhan submits, at great risk of spoilage considering it has been seized in this District since mid-February and is destined for what will be a 40-day voyage to China.[1]  Notably, no bond has been posted.

For the purposes of the present motion to vacate, it is undisputed that the plaintiffs have maritime claims against Daebo International Shipping Co., Ltd. and that Shinhan Capital Co., Ltd. is the DAEBO TRADER's *registered* owner.  But the plaintiffs allege that the vessel's true beneficial owner is Daebo, and that Shinhan is merely an alter ego or fraudulent transferee -- nothing more than a financier -- with respect to Daebo, which is a debtor to plaintiffs.  Advancing similar allegations, beginning in mid-February 2015, five plaintiffs have filed verified complaints against both Daebo International Shipping Co. Ltd. and Shinhan Capital Co. Ltd. seeking attachment of the M/V DAEBO TRADER.  The plaintiffs in their complaints urge the Court to disregard Shinhan's registered ownership of the vessel because Shinhan is

---

[1]To which the plaintiffs reply: "As a multi-million dollar financial institution and purported registered owner of the Vessel, [which has known of plaintiffs' attachment proceedings and seizure of the vessel since February 18,] Shinhan is more than capable of posting security for release of the Vessel. Its failure to do so belies its alleged concerns regarding the cargo."  That on April 10, 2015 the Court granted Gavilon Grain LLC's motion to intervene and motion to allow transloading of cargo may have settled this dispute concerning cargo spoilage.

merely an alter ego of Daebo and that the two act as a single business entity. Based on the allegations of the verified complaints and, pursuant to Rules B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issued Rule B writs of foreign attachment, the first of which was served on the DAEBO TRADER on or before February 18, 2015; according to the U.S. Marshals, the vessel was seized on Friday, February 20, 2015.[2]

Shortly thereafter, the DAEBO TRADER's time charterer, Dana Shipping and Trading S.A., filed Rule E(4)(f) motions to vacate the maritime attachments on the ground that the plaintiffs' claims are solely against Daebo and that the vessel is solely the property of Shinhan such that the attachments are invalid.[3] The Court denied the motions. The parties do not dispute that the background of this case is accurately summarized in this Court's March 2, 2015

---

[2] The first such case having been filed in this Section of Court, the subsequently filed cases have since been transferred here and consolidated with Richardson Stevedoring & Logistics Services, Inc.'s case against Daebo International Shipping Co. Ltd. and Shinhan Capital Co. Ltd.

[3] Dana argued that the plaintiffs could not carry their burden of proving that defendant Shinhan Capital Co., Ltd. is an alter ego of defendant Daebo International Shipping Co., Ltd., making the attachment improper under Supplemental Rule B, and further argued that the plaintiffs' improper attachment of the bunkers is interfering with Dana Shipping's charter of the M/V DAEBO TRADER.

Order and Reasons denying Dana's motions to vacate.[4] In denying the motions, the Court listed the evidence submitted by the plaintiffs in support of their probable cause burden of proof to maintain the attachment.[5]

Meanwhile, on March 16, 2015, Daebo International Shipping Co. Ltd., making a restricted appearance as lessee of the M/V DAEBO TRADER, notified the Court that it had commenced an ancillary case under Chapter 15 in which it had applied for recognition in the United States Bankruptcy Court for the Southern District of New York of its foreign bankruptcy proceeding pending in the Seoul Central District Court in the Republic of Korea. On March 20, 2015, Daebo notified the Court that it had applied for and was granted provisional relief pending a hearing on its petition for recognition as a "foreign main" bankruptcy proceeding. The bankruptcy court in New York declined to grant vacatur relief sought by Daebo regarding this Court's Rule attachments of the DAEBO TRADER. However, the bankruptcy judge issued an order

---

[4] At the time the Court denied Dana's motions to vacate, Civil Action Numbers 15-758 and 15-814 had not yet been filed, let alone transferred to this Section of Court and consolidated with the three first-filed cases. Indeed, the writ of maritime attachment requested by plaintiff Jaldhi Overseas Pte. Ltd. was filed on March 9, 2015 and transferred to this Court on March 17, 2015; and the writ of maritime attachment requested by plaintiff Lark Shipping S.A. was even more recently filed on March 13, 2015 and transferred to this Section of Court on March 23, 2015.

[5] Since March 2, SPV, Richardson, and AMS have filed amended verified petitions.

4

instituting a limited stay; its order granting provisional relief pending hearing on petition for recognition as a foreign main proceeding precludes any person or entities from

> securing or executing against any asset or property of [Daebo] or taking any actions to undertake the enforcement in the United States of any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order or arbitration award against [Daebo] ... or its property, whether owned, chartered, or leased or the proceeds thereof within the territorial jurisdiction of the United States....

The parties here dispute whether or to what extent the bankruptcy stay precludes or limits *or* supports relief requested in these consolidated proceedings.[6]

Shinhan now enters a restricted appearance as the owner of the DAEBO TRADER, with a full reservation of all rights and defenses pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, submits additional evidence for the Court to consider, and urges the Court to vacate the maritime attachments of the M/V DAEBO TRADER.

                                  I.

Where, as here, property has been attached under Supplemental Admiralty Rule B,[7] Supplemental Admiralty Rule E(4)(f) entitles any

---

[6] In fact, Shinhan appeals to this Court's equitable authority in suggesting that the bankruptcy proceeding and stay supports release of the vessel on futility grounds.

[7] The special remedies and procedures available to admiralty and maritime claimants are governed by the Supplemental

party claiming an interest in the property to a prompt hearing at which the attaching plaintiff bears the burden of showing that the attachment is proper and should not be vacated. Fed. R .Civ. P. Supp. R. E(4)(f).[8]

---

Rules for Admiralty or Maritime Claims, as part of the Federal Rules of Civil Procedure. Supplemental Rule B concerns the attachment and garnishment procedure available in the context of *in personam* actions:

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required ... are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property ... in the hands of the garnishees named in the process.
> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that...the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment....

Fed. R .Civ. P. Supp. R. B. See also In re Murmansk Shipping Co., No. 00-2354, 2001 WL 699530, at *2 (E.D. La. June 18, 2001)("[i]n considering the propriety of an attachment, the court's inquiry is limited to an assessment of whether the underlying complaint alleges an *in personam* action grounded in maritime law and whether the attachment was necessary to effectuate jurisdiction").

[8]Rule E(4)(f) states:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

To support maritime attachment of property under this Rule, a plaintiff must satisfy filing, notice, and service requirements, and must also show that: (1) the plaintiff has a valid prima facie admiralty claim against the defendants; (2) the defendants cannot be found within the district; (3) the defendants' property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by* Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). Once a defendant's property has been attached, and the defendant contests the attachment by moving to vacate the attachment under Rule E(4)(f), the attachment must be vacated unless the attaching party presents sufficient evidence to show probable cause for the attachment. See Austral Asia Pte Ltd. v. SE Shipping Lines Pte Ltd., No. 12-1600, 2012 WL 2567149 (E.D.La. July 2, 2012)(Engelhardt, J.)(citations omitted). However, courts are not obliged to make binding determinations of fact during Rule E(4)(f) hearings; rather, courts are called upon to "'merely hold[] that it is [or is not] likely' that alleged facts are true." Id. at *2 (noting that post-attachment hearings are "not intended to definitively resolve the dispute between the parties; instead, the

---

Fed. R .Civ. P. Supp. R. E. See also Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 51 (2d Cir. 2008), cert. denied, 555 U.S. 1102 (2009).

7

district court makes a preliminary determination of whether reasonable grounds exist for the arrest").

## II.
### A.

The only issue presented is whether the plaintiffs have (again) shown probable cause for the attachment of the M/V DAEBO TRADER by pleading valid prima facie admiralty claims against Daebo and Shinhan.

These plaintiffs make claims against Daebo on the basis of the underlying debts pled in their verified complaints, but also against Shinhan based on Shinhan's and Daebo's alleged fraudulent scheme in which the defendants allegedly have defrauded Daebo's creditors by designing a creative financial transaction in which Shinhan is called the vessel's registered owner and Daebo is called the lessor until the note is paid off by Daebo through various "lease" payments of principal and interest.[9] Since this Court's prior order denying a motion to vacate attachment by the vessel's time charterer, Shinhan now submits that it has offered conclusive evidence, in the form of affidavit testimony and the lease agreement between Shinhan and Daebo, that it is the true owner of

---

[9] Notably, the plaintiffs allege claims against both defendants. The Court declines to address Shinhan's estoppel argument as to three of the plaintiffs. Even if the Court determined that clearly inconsistent positions had been taken (which the Court does not so determine), such a finding would not advance the ultimate issue presented here.

the DAEBO TRADER. But the plaintiffs counter that this evidence, including the lease agreement, is at the heart of their fraudulent transfer theory of their alter ego claims. The Court finds that the plaintiffs have plausibly alleged alter ego and fraudulent transfer theories of recovery with sufficient particularity to allow the defendants to frame responsive pleadings.

*B.*

In urging the Court to vacate the attachments of its vessel, Shinhan submits that it has presented "dispositve evidence" defeating the plaintiffs' alter ego and sham transaction allegations. Faced with this newly-submitted evidence, Shinhan maintains that the Rule B plaintiffs' attachments are no longer supported by the probable cause this Court found present in its March 2, 2015 Order and Reasons. The plaintiffs counter that the very evidence submitted by Shinhan in support of its motion to vacate actually bolsters the plaintiffs' submission, such that the allegations and evidence that this Court previously deemed sufficient to satisfy their burden under Admiralty Rule E(4)(f), coupled with Shinhan's new evidence, suffice to withstand Shinhan's request for vacatur of the attachments. The Court agrees.

For the purposes of the motions to vacate, it is undisputed that the plaintiffs have maritime claims against Daebo and that Shinhan is the DAEBO TRADER's registered owner. The Court will not

9

reiterate the evidence plaintiffs previously offered in support of their probable cause burden when the Court visited this issue in denying Dana Shipping's motion to vacate. See Order and Reasons dated March 2, 2015. Rather, the Court will focus on whether or not the evidence that Shinhan now submits alters the plaintiffs' prior showing.

Shinhan adds three things to the record: the Lease Agreement between Daebo and Shinhan concerning the M/V DAEBO TRADER, an affidavit from Mr. Kwon Soonpil (Senior Manager of the Strategy Financing Team of the Corporate Finance Division for Shinhan), and an affidavit from Mr. Duk-Kyou Hyun, an attorney in the Republic Korea and partner of DR & AJU International Law Group, located in Seoul, South Korea.

Looking first to Mr. Soonpil's affidavit and matters of public record, none of the traditional factors considered in determining the existence of an alter ego relationship appear to be met here. See A. Coker & Co. v. National Shipping Agency Corp., 1999 WL 311941 (E.D. La. May 17, 1999)(Vance, J.)(citation omitted). To sample some of these factors: here, there is no common or overlapping stock ownership between Daebo and Shinhan; there are no common or overlapping directors or officers between Shinhan and Daebo; Shinhan and Daebo maintain distinct corporate offices; according to Shinhan Financial Group's Annual Report, Shinhan is adequately capitalized; Shinhan does not exist solely as a holding

10

company; neither Daebo nor Shinhan caused the incorporation of the other; and Daebo and Shinhan do not file consolidated financial statements.  Notably, however, the plaintiffs do not dispute that most of the traditional factors do not support their alter ego theory.  Plaintiffs focus instead on the (allegedly fraudulent) financing that Shinhan and Daebo have arranged for the DAEBO TRADER in support of their fraudulent transfer and alter ego theories of recovery; that is, plaintiffs submit that the defendants' alter ego liability arises out of their joint participation in a fraudulent transfer meant to conceal the DAEBO TRADER from creditors.  In response, Shinhan submits that review of the lease terms through the lens of Korean law shows that there is nothing fraudulent about Daebo and Shinhan's financing arrangement.

Mr. Hyun has over 20 years of experience practicing Korean law with an emphasis on maritime law and commercial disputes.  Mr. Hyun states that, under South Korean law, Shinhan has at all times remained the owner of the DAEBO TRADER and there is no language in the Lease Agreement (which he submits is fully enforceable under South Korean law) to indicate that Shinhan was operating as a shell entity for Daebo.  Explaining the financing arrangement and lease, Mr. Hyun explains that Daebo was interested in purchasing the DAEBO TRADER, but did not have sufficient funding.  Daebo contributed 15% of the value of the purchases price of the vessel while the other 85% was financed by Shinhan.  The vessel was mortgaged as security

11

for a loan and Shinhan was registered as the owner of the vessel. Mr. Hyun explains that this financing arrangement and lease are valid under South Korean law and, until the loan amount has been repaid in full, the ownership of the vessel remains vested with Shinhan.

It is this evidence that the plaintiffs characterize as illustrative of their underlying alter ego and fraudulent transfer claims. That is, the plaintiffs suggest that the Lease Agreement and Mr. Hyun's explanation of it simply bolster their alter ego and fraudulent transfer allegations. This new evidence shows that, from the outset, Daebo had a 15% equity interest in the vessel, with the title not transferring from Shinhan to Daebo until the loan amount has been repaid. Daebo has made 86 monthly "lease" payments, but the plaintiffs note that these are payments of both principal and interest on a loan, at the end of which, Daebo will acquire at no cost the "leased property", the DAEBO TRADER. The plaintiffs submit that this arrangement, whereby Shinhan retains the registered ownership of the vessel until Daebo pays down the debt incurred when the vessel was purchased from her prior owners, financed by Shinhan, is a fraudulent scheme intended to defraud Daebo creditors like the plaintiffs in these consolidated cases. But for this fraudulent scheme, the plaintiffs submit, Daebo would be the unquestioned owner of the DAEBO TRADER. For these reasons, and based on Shinhan's own evidence, the plaintiffs urge the Court

to look beyond the nominal ownership and the "lease agreement" (whether valid or not under Korean law), and see the Shinhan/Daebo relationship for what it really is.[10]

C.

The parties' differing views of the same evidence beg a choice of law question. Whether or not the plaintiffs have succeeded in alleging a prima facie case here depends, in part, upon which substantive law controls. "Assessing the prima facie validity of a claim is a substantive inquiry that should be governed by the relevant substantive law." Blue Whale Corp. v. Grand China Shipping Development Co., Ltd., 722 F.3d 488, 495 (2d Cir. 2013).[11] Foremost, because the plaintiffs' alter ego claims are collateral

---

[10] At least, the plaintiffs submit, the attorney affidavit and lease agreement show that Daebo in fact has an attachable interest in the vessel, along with Shinhan.

[11] In Blue Whale, a Liberian ship owner chartered its vessel to a Chinese charterer for a voyage from Brazil to China. The charter party required that disputes be submitted to arbitration in London and selected as the governing law English law. When a dispute concerning freight payment arose, the owner initiated arbitration in London and, thereafter, the ship owner sought and obtained a Rule B attachment in New York against property alleged to be an alter ego of the charterer. In vacating the attachment, the district court agreed with the alleged alter ego that the prima facie validity of the alter ego claim against it should be decided under English law in accordance with the charter party's choice of law provision. The Second Circuit reversed, finding that choice of law clauses in underlying contracts "are 'irrelevant' to assessing alter-ego claims." Id. (citation omitted)("This corporate identity inquiry is indeed distant from the dispute over the charter party's provisions regarding the transport of iron ore.").

13

to the "Lease Agreement", that agreement's choice of South Korean law is irrelevant to assessing the plaintiffs' equitable alter ego and fraudulent transfer theories of recovery. See id. However, federal common law does not automatically govern an alter ego claim. See id. at 496. Rather, the Court must apply the U.S. maritime multi-factor choice-of-law test articulated in Luritzen v. Larsen, 345 U.S. 571 (1953) and its progeny. Id. at 498-99.[12]

Unless convinced otherwise at a later stage of these proceedings,[13] this Court's analysis of the plaintiffs' alter ego and fraudulent transfer theories of recovery will be governed by U.S. general maritime law. Each of five plaintiffs initiated this Rule B proceeding in the United States, where Shinhan's or Daebo's DAEBO TRADER was passing through. That the DAEBO TRADER is a Korean-flagged vessel and that the shipowner (whether Daebo or Shinhan or both) is Korean are just two more factors in the choice of law calculus. Although three of the five plaintiffs are foreign

---

[12]The non-exhaustive list of factors includes:

> (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

Id. at 499 n.11 (quotations and citations omitted).

[13]The Court expects it will have all of the relevant facts to definitively determine which substantive law applies when it is making its merits determination.

parties, two of them are United States parties based in Texas. The relevant transaction is not Shinhan's purported acquisition of registered ownership under the lease agreement in South Korea but, rather -- at least with respect to the United States plaintiffs -- contracts entered into in the United States between Daebo and the United States, contracts which the plaintiffs allege were then breached in the United States. As to the three foreign plaintiffs, there are potentially three additional sources of law that could control.[14] Where, as here, the Court is faced with multi-national foreign parties engaged in breach of contract disputes (and additional alter ego and fraudulent transfer claims sounding in equity), yielding more than one potential source of applicable substantive law, the Court finds at this stage that federal common law has the strongest points of contact with these various claims.

Invoking <u>Interpool Limited v. Char Yigh marine (Panama) S.A.</u>, 890 F.2d 1453 (9th Cir. 1989) and <u>In re Lykes Bros. S.S. Co., Inc.</u>, 196 B.R. 574 (Bankr. M.D. Fla. 1996) as elucidating federal common law to be applied here, the plaintiffs submit that a "lease" in the nature of Daebo's is equitably disregarded under federal common law where it would falsely conceal ownership of a vessel in a finance company. The plaintiffs submit that the financing arrangement

---

[14]Where no authority is presented by these parties about applying their foreign law, but where these plaintiffs dispute application of South Korean law, it is reasonable to conclude that these plaintiffs have acquiesced in the application of federal common law.

between Daebo and Shinhan is nothing more than a sale-leaseback arrangement where Shinhan transferred a Daebo asset to itself to protect it from Daebo creditors.

Once again, the plaintiffs submit that, in light of the preliminary nature of these proceedings, they have offered more than sufficient allegations and evidence that Daebo is the true, legal, and beneficial owner of the DAEBO TRADER.  Mindful that a Rule E(4)(f) hearing is not intended to resolve disputes on the merits, the Court finds that the plaintiffs have submitted sufficient allegations supporting their position that Daebo has an attachable interest in the M/V DAEBO TRADER by virtue of the alleged sham sale-leaseback transaction entered into between Daebo and Shinhan.  To be sure, the plaintiffs have plausibly alleged alter ego and fraudulent transfer claims with enough particularity to allow the defendants to frame a responsive pleading.  Thus, at this stage of proceedings, the Court is satisfied that the attachment of the DAEBO TRADER is supported by probable cause.[15]

---

[15] Finally, insofar as Shinhan urges the Court to exercise its equitable discretion to vacate the attachments and release the vessel, the Court declines to do so.  Shinhan submits that continued attachment of the vessel would be futile in light of the bankruptcy stay.  However, given the provisional nature of the stay in the New York bankruptcy proceeding, and in light of the preliminary nature of the Court's review on a Rule E(4)(f) motion, the request is at best premature.

Accordingly, Shinhan's motion to vacate the attachments is DENIED.

New Orleans, Louisiana, April 20, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE